EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Río Construction, Corp.<br>        Peticionario<br><br>                v.<br><br>Municipio de Caguas<br>        Recurrido | Certiorari<br><br>2001 TSPR 143<br><br>155 DPR _____ |

Número del Caso: CC-1996-373


Fecha: 25/octubre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI


Juez Ponente:
                        Hon. Carmen Ana Pesante Martínez

Abogado de la Parte Peticionaria:
                        Lcdo. Fernando Barnés Rosich


Abogado de la Parte Recurrida:
                        Lcdo. Ovidio Zayas Rivera



Materia: Cobro de Dinero



        Este documento constituye un documento oficial del
        Tribunal Supremo que está sujeto a los cambios y
        correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución
        electrónica se hace como un servicio público a la
        comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Río Construction, Corp.

    Peticionario

      v.                         CC-1996-373

Municipio de Caguas

    Recurrido

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODON.

San Juan, Puerto Rico a 25 de octubre de 2001

Hoy nos toca interpretar nuevamente el alcance y la aplicación de los incisos (a) y (b) del Art. 15.002 de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4702. Nos corresponde determinar si la decisión **final** que emite un funcionario municipal en un caso particular, en el que se aplican a una persona o una corporación las disposiciones de una ordenanza "de una forma determinada", que activa el término de

caducidad establecido en el Art. 15.002, supra, y le otorga a la parte afectada el derecho a revisar su

dictamen ante el Tribunal de Primera Instancia, <u>requiere ser notificada por escrito</u>.

También tenemos la oportunidad de aclarar <u>en este caso en particular y en virtud de la ley entonces vigente</u>, por qué el momento preciso para la aplicación de una ordenanza municipal que autoriza a un municipio a imponer arbitrios en los casos de obras de construcción es el vigente a la fecha de la celebración de la subasta y no a la fecha de la firma del contrato.

I

Después de celebrar la correspondiente subasta pública el 28 de octubre de 1992, la Autoridad de Carreteras y Transportación de Puerto Rico (en adelante la Autoridad), le adjudicó a Río Construction, Corporation (en adelante Río Construction) la obra de construcción denominada "Ensanche de la Carretera PR-189 Municipio de Caguas, Puerto Rico AC-018917". Ésta ofreció construir el proyecto por el precio cierto de dos millones novecientos diecinueve mil ochocientos veintiocho dólares con setenta centavos ($2,919,828.70). El contrato fue otorgado el 18 de diciembre de 1992.

Durante la realización del proyecto, Río Construction le pagó al Municipio de Caguas (en adelante Municipio) las patentes municipales, para cuyo cómputo se consideró el total del valor licitado del proyecto, es decir los dos millones novecientos diecinueve mil ochocientos veintiocho dólares con setenta centavos ($2,919,828.70).

Al momento de la subasta estaba en vigor la Ordenanza Núm. 37, Serie: 1989-90, aprobada en marzo de 1990, la cual imponía al contratista el deber de pagar el uno por ciento (1%) de interés del valor licitado de la obra por concepto de arbitrios de construcción. Conforme a lo dispuesto por dicha ordenanza y mediante carta de 7 de octubre de 1993, suscrita y firmada por la Directora de Finanzas, Alma R. Umpierre, el Municipio le informó a Río Construction que adeudaba la suma de veintinueve mil ciento noventa y ocho dólares con veintinueve centavos ($29,198.29) por concepto de arbitrios relacionados con la obra de construcción antes mencionada. Se le indicó además, que tenía diez (10) días laborables desde el depósito de la carta en el correo, para proceder al pago de la deuda y presentar argumentos en contra de la misma. El 20 de octubre de 1993 el representante legal de Río Construction se dirigió mediante comunicación escrita a la Directora de

Finanzas del Municipio.   En la misma expuso una serie de razones por las cuales entendía que no procedía el cobro de los arbitrios de construcción exigidos por ésta.

Así las cosas, el **21 de diciembre de 1993**, catorce (14) meses después de la subasta, el Municipio aprobó una nueva ordenanza que denominó también la Ordenanza Núm. 37, aunque en este caso correspondía a la Serie: 1993-94.[1] En dicha ordenanza se aumentó el tipo contributivo de un por ciento (1%) al de dos y medio por ciento (2.5%) y se dispuso que la misma fuese retroactiva al 5 de octubre de 1977.   En conformidad con esta nueva ordenanza y mediante carta de 1$^{ro}$ de mayo de 1994, la Directora de Finanzas del Municipio le notificó a Río Construction que su nueva deuda por concepto de arbitrios sobre el proyecto era la suma de cincuenta y cinco mil cuatrocientos noventa y cinco dólares con setenta y un centavos ($55,495.71).   También le informó que tenía "treinta (30) días calendarios a partir del depósito de esta carta en el correo para solicitar vista administrativa para la presentación de argumentos en contra de esta imposición, según lo establece la ordenanza vigente."   El 21 de mayo de 1994 la representación legal de Río Construction contestó la misiva y solicitó la celebración de una vista administrativa con el propósito de presentar argumentos en contra de la imposición de los arbitrios.

La vista administrativa fue pautada para el 26 de mayo de 1994.  **Ese día el Lcdo. Mario Edmundo Vélez, uno de los abogados de Río Construction, y el Lcdo. Ovidio Zayas Rivera, asesor jurídico de la Directora de Finanzas del Municipio, acordaron, frente a la Directora y con la aprobación de ésta, que la vista no se celebraría y que Río Construction habría de solicitar una sentencia declaratoria al entonces Tribunal Superior, ya que no había un procedimiento administrativo para lo que se pretendía dilucidar.  De esta forma se resolverían las controversias jurídicas que se hubieran podido adjudicar a nivel administrativo.**[2]

Río Construction no pagó los arbitrios de construcción que le reclamó el Municipio, ni bajo la nueva Ordenanza Núm. 37, Serie: 1993-94, ni bajo la Ordenanza Núm. 37, Serie: 1989-90.   El 29 de septiembre de 1994 presentó una

---

[1]     Esta ordenanza derogó lo siguiente: Ordenanza Núm. 33, Serie: 1977-78; Ordenanza Núm. 46, Serie: 1977-78 y la Ordenanza Núm. 37, Serie: 1989-90.

[2]     Esta información surge de una declaración jurada suscrita el 18 de julio de 1995 por el Sr. Francisco José Arias Rodríguez, contralor de Río Construction.

acción sobre solicitud de sentencia declaratoria en el entonces Tribunal Superior de Caguas. En síntesis, alegó, que en virtud de lo resuelto en Las Piedras Const. Corp. v. Mun. de Dorado, 134 D.P.R. 1018 (1994), los municipios no estaban autorizados a imponer la doble tributación que representa cobrar patentes y arbitrios a un contratista, ambos sobre el mismo valor de una obra pública, hasta que se aprobó la Ley Núm. 93 de 17 de noviembre de 1992 la cual enmendó, con carácter prospectivo, la Sec. 3 de la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974; 21 L.P.R.A. sec. 651b. Conforme a ello adujo, que debido a que en su caso la subasta fue celebrada y adjudicada con anterioridad al 17 de noviembre de 1992 (fecha en la que entró en vigor la Ley Núm. 93, supra), y que la construcción de la obra fue objeto de tributación por el Estado a tenor con la Ley de Patentes Municipales, supra, la imposición del arbitrio de construcción bajo la Ordenanza Núm. 37, Serie: 1989-90 constituyó una doble tributación no autorizada. Con respecto a la Ordenanza Municipal aprobada el 21 de diciembre de 1993 (Ordenanza Núm. 37, Serie: 1993-94), sostuvo que los municipios no podían imponer contribuciones de manera retroactiva. Finalmente alegó que la imposición de los arbitrios carecía de validez ya que no existía un procedimiento administrativo que prescribiera la manera de dilucidar controversias surgidas como resultado de la imposición de tales arbitrios.

El 19 de mayo de 1995 el Municipio presentó una solicitud de desestimación. Alegó, entre otras cosas, que la acción de Río Construction fue interpuesta fuera del término de caducidad de veinte (20) días dispuesto por el Art. 15.002 de la Ley de Municipios Autónomos, supra. Por consiguiente, señaló que el tribunal de instancia carecía de jurisdicción para entender en la misma. Adujo, además, que al momento de celebrarse el contrato, el día 18 de diciembre de 1992, ya estaba vigente la Ley Núm. 93 de 17 de noviembre de 1992, supra, la cual autorizaba a los municipios a establecer y cobrar arbitrios sobre la construcción de obras y cobrar patentes municipales. Añadió que la Ordenanza Municipal que disponía y autorizaba el pago impugnado había sido aprobada con carácter retroactivo al año 1977 por lo que procedía el referido pago.

Luego de varios trámites procesales y la presentación de sendas solicitudes de sentencia sumaria, el tribunal de instancia dictó sentencia el 8 de febrero de 1996. En ésta concluyó que, a los fines de determinar si la imposición municipal de una ordenanza para el cobro de arbitrios de

construcción es aplicable o no, la fecha a considerarse era la del contrato y no la de la subasta.  En virtud de ello, declaró válida la facultad de la Asamblea Municipal de Caguas y del Municipio para cobrar con los intereses correspondientes, las imposiciones contributivas impugnadas por Río Construction, de conformidad con la Ordenanza Municipal Núm. 37 de 21 de diciembre de 1993, con carácter retroactivo al 17 de noviembre de 1992.  Nada dispuso expresamente sobre la solicitud de desestimación mediante la cual el Municipio alegó que la acción de Río Construction había sido presentada fuera del término de caducidad de veinte (20) días dispuesto por el Art. 15.002 de la Ley de Municipios Autónomos, supra.[3]

Río Construction apeló oportunamente al Tribunal de Circuito de Apelaciones, (en adelante Tribunal de Circuito).  Señaló la comisión de los errores siguientes:

Primer error:  Incidió el tribunal de instancia al entender que, a los fines de aplicar una ordenanza de arbitrios municipales, en el caso de una obra pública, la fecha determinante es la del contrato y no la de la subasta.

Segundo Error:  Habiéndose celebrado la subasta de la obra pública objeto de este pleito el 28 de octubre de 1992, dicha obra está exenta del pago de arbitrios, a tenor con la doctrina de [Las Piedras Construction Corp. v. Municipio de Dorado, supra,] por lo que el tribunal de instancia incidió al determinar lo contrario.

Tercer error:  Incidió el tribunal de instancia al aplicar retroactivamente la segunda ordenanza Núm. 37 (Serie 1993-94)[aprobada el 21 de diciembre de 1993].

El 17 de septiembre de 1996, el Tribunal de Circuito dictó una sentencia mediante la cual modificó el dictamen del foro de instancia.  Sostuvo que la fecha determinante para la imposición de arbitrios es la fecha en que se otorga el contrato.  Concluyó, sin embargo, que erró el tribunal de instancia al conferirle efecto retroactivo a la nueva Ordenanza Núm. 37, Serie: 1993-94, debido a que la misma menoscaba las obligaciones contractuales contraídas entre Río Construction y la Autoridad, y violaba lo dispuesto en el Art. 11,

_____

[3]     En la vista celebrada por el tribunal de instancia sobre el estado de los procedimientos, se estableció para récord en la Minuta de 12 de septiembre de 1995, que el Municipio no se expresaría en torno al aspecto de caducidad, ni cuestionaría si el mecanismo de sentencia declaratoria era el remedio adecuado para dilucidar el pleito.

Por otra parte y con relación a dicha sentencia, Río Construction interpuso una moción de reconsideración.  La reconsideración, aparentemente, nunca fue atendida por el foro de instancia.

Sec. 7 de nuestra Constitución y su equivalente en la Constitución Federal.
No dispuso cosa alguna sobre el aspecto jurisdiccional.[4]

Inconforme con este dictamen, Río Construction presentó ante nos un
recurso de certiorari alegando la comisión de los errores siguientes:

> A.  Incidió el Honorable Tribunal de Circuito de Apelaciones al
> entender que, a los fines de aplicar una ordenanza de arbitrios
> municipales, en el caso de una obra pública, la fecha determinante
> es la del contrato y no la de la subasta.

> B.  Habiéndose celebrado la subasta de la obra pública objeto de
> este pleito el 28 de octubre de 1992, dicha obra está exenta del
> pago de arbitrios, a tenor con la doctrina de [Las Piedras
> Construction Corp. v. Municipio de Dorado, supra,] por lo que el
> tribunal de instancia incidió al determinar lo contrario.

Examinado el recurso presentado, concedimos tanto al Municipio como a
Río Construction, un término para que se expresaran sobre la alegada nulidad
de las actuaciones del tribunal de instancia.  En particular, si dicho
tribunal tenía jurisdicción para atender la solicitud de sentencia
declaratoria de Río Construction.  También ordenamos que se expresaran sobre
el primer error presentado por Río Construction en su petición.  Ambas partes
comparecieron y estamos en posición de resolver sin ulteriores
procedimientos.

II

En sus respectivos escritos ambas partes estuvieron de acuerdo en que,
en Nogama Const. Corp. v. Mun. de Aibonito, 136 D.P.R. 146 (1994), este
Tribunal resolvió que sólo la notificación formal final de una determinación
administrativa de un funcionario municipal tiene el efecto de activar el
término de caducidad de veinte (20) días dispuesto por el Art. 15.002 de la
Ley de Municipios Autónomos, supra, para solicitar revisión judicial.  No
obstante, el Municipio señaló que, aun cuando en dicho caso se habla de
"notificación formal" no se define cómo ha de efectuarse tal notificación;
no se dispone si la notificación tiene que ser por escrito o si puede ser verbal
también.

---

[4]    El Juez Hon. Efraín Rivera Pérez concurrió con el resultado sin opinión
escrita.

III

En Nogama Const. Corp. v. Mun. de Aibonito, supra, nos enfrentamos a una situación similar a la que hoy está ante nuestra consideración. Allí tuvimos la oportunidad de interpretar el alcance y aplicación de los incisos (a) y (b) del Art. 11.02 de la Ley Orgánica de los Municipios, Ley Núm. 146 de 18 de junio de 1981, 21 L.P.R.A. sec. 3402 (a) y (b), predecesor del Art. 15.002 de la Ley de Municipios Autónomos, supra.[5] Resolvimos, que cuando se trata de una acción judicial dirigida a impugnar la decisión adjudicativa que ha tomado un funcionario municipal autorizado luego de aplicar las disposiciones de una ordenanza, el término de caducidad[6] de veinte (20) días se contaría a partir de la notificación final de dicha decisión, y no desde el momento en que la ordenanza fue meramente notificada a la parte que la impugna. Expresamos, además, que un funcionario municipal autorizado es aquél "cuyo nombramiento tiene que ser confirmado por la Asamblea Municipal. Por lo tanto, en dicha división solamente su decisión es la que tiene la finalidad requerida por la ley para activar los términos para solicitar la revisión judicial." Nogama, supra, pág. 154. Finalmente, aun cuando en Nogama, supra, dijimos que la notificación final de un funcionario municipal autorizado, debe ser de modo tal que el ciudadano afectado pueda enterarse de la decisión final que se ha tomado en su contra, no especificamos la forma y manera en que dicha notificación debía ser realizada para activar el término de caducidad dispuesto en dicho artículo.

IV

_____

[5] La Ley Orgánica de los Municipios, Ley Núm. 146 de 18 de junio de 1980, 21 L.P.R.A. sec. 2001 et seq. fue derogada por la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 et seq. Sin embargo, los artículos pertinentes al caso de autos permanecieron prácticamente inalterados por la nueva ley.

[6] En Acevedo v. Asamblea Mun. San Juan, 125 D.P.R. 182, 187 (1990), al interpretar el Art. 11.02 de la Ley Orgánica de Municipios, supra, 21 L.P.R.A. sec. 3402, que como ya expresáramos fue el predecesor del Art. 15.002, reiteramos que el término de veinte (20) días dispuesto en dicho artículo era uno de caducidad y no admite interrupción, que podía ser levantado como defensa por la parte interesada e inclusive debía invocarlo el tribunal "sua sponte". Este término tiene el propósito de impartirle certeza y finalidad a las actuaciones del gobierno municipal. Véase, además, Harland Co. v. Mun. de San Juan, 139 D.P.R. 185, 189-190 (1995).

Sabido es que la notificación de una decisión final "es un requisito del debido proceso de ley con el que se debe cumplir de modo tal que el ciudadano afectado pueda enterarse de la decisión final que se ha tomado en su contra." Nogama Const. Corp. v. Mun. de Aibonito, supra, pág. 152. (Enfasis suplido.) El deber de notificar a las partes no constituye un mero requisito. Su importancia radica en el efecto que tiene dicha notificación sobre los procedimientos posteriores al dictamen final emitido en un proceso adjudicativo. La falta de una debida notificación podría afectar el derecho de una parte a cuestionar el dictamen emitido y debilita las garantías del debido proceso de ley. Falcón Padilla v. Maldonado Quirós, 138 D.P.R. 983, 989 (1995). Véanse, además: Arroyo Moret v. F.S.E., 113 D.P.R. 379, 381 (1982); Berríos v. Comisión de Minería, 102 D.P.R. 228, 230 (1974). Así pues, "[l]a correcta y oportuna notificación de las órdenes y sentencias es requisito sine qua non de un ordenado sistema judicial. Su omisión puede conllevar graves consecuencias, además de crear demoras e impedimentos en el proceso judicial." J.A. Cuevas Segarra, Práctica Procesal Puertorriqueña: Procedimiento Civil, San Juan, Pubs. J.T.S., 1979, Vol. II, Cap. X, pág. 436.

A tenor con los principios antes expuestos, procede que evaluemos los estatutos orgánicos aplicables a los Municipios Autónomos, en particular, la disposición pertinente a la revisión judicial de los decisiones emitidas por los municipios o un funcionario autorizado en torno a la aplicación de una ordenanza municipal. Veamos.

V

El Art. 15.002 de la Ley de Municipios Autónomos, supra, aplicable al caso que nos ocupa, dispone, en lo aquí pertinente, lo siguiente:

> El Tribunal Superior de Puerto Rico entenderá y resolverá, con exclusividad, a instancias de la parte perjudicada, sobre los siguientes asuntos:
>
> (a) Revisar cualquier acto legislativo o administrativo de cualquier funcionario u organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.
>
> (b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la Asamblea, del Alcalde, de la Junta de Subasta o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico o por las leyes estatales.

(c) ...

(d) ...

En los casos contemplados bajo los incisos (a) y (b) de esta sección, la acción judicial sólo podrá instarse dentro de los veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya promulgado o comunicado a la parte querellante, a menos que se disponga otra cosa por ley. (Énfasis suplido.)[7]

De la disposición legal antes citada se puede colegir que el Tribunal Superior [Sala Superior del Tribunal de Primera Instancia],[8] tendrá competencia exclusiva para entender en cualquier acción judicial instada para "[r]evisar cualquier acto legislativo o administrativo que... sea contrario a las leyes de Puerto Rico" y "[s]uspender la ejecución de cualquier ordenanza... de la Asamblea... que lesione derechos garantizados por... las leyes estatales."

Dicho artículo señala además, que en los casos contemplados bajo los incisos (a) y (b) antes citados, la acción judicial deberá interponerse dentro de los veinte (20) días siguientes a la fecha en que el acto legislativo o administrativo se haya realizado o que la ordenanza, resolución, acuerdo u orden se haya promulgado o comunicado a la parte afectada.

Es de notar que el Art. 15.002, supra, a pesar de otorgar el derecho a la revisión judicial de los dictámenes emitidos por el Municipio o cualquier funcionario autorizado, no dispone el procedimiento aplicable para el ejercicio de tal derecho. En particular, no dispone la manera en la que debe efectuarse la notificación final que activa el término de caducidad de veinte (20) días para acudir al Tribunal Superior.[9] Tampoco el Municipio tiene o tenía un procedimiento administrativo para dilucidar controversias como las suscitadas en este caso.[10] Ello nos obliga a explorar judicialmente las posibles fuentes para atender esta laguna legislativa.[11]

---

[7]    Hoy día y en lo aquí pertinente, el primer párrafo se catalogó como inciso (1) y se sustituyó el término "Tribunal Superior" por "Tribunal de Primera Instancia". En el inciso (1)(b) se suprimió la frase "de la Junta de Subasta" el resto de las disposiciones aquí citadas han permanecido inalteradas.

[8]    Respecto al término "Tribunal de Primera Instancia" véase, además, Plan de Reorganización Núm. 1 de la Rama Judicial de 28 de julio de 1994, mejor conocido como la Ley de la Judicatura de Puerto Rico de 1994.

[9]    Véase, escolio 6.

[10]    Al respecto, véase el último párrafo de la pág. 4 de la ponencia.

Para superar esta laguna legislativa debemos acudir entonces a la técnica de la analogía.  Vélez Rodríguez v. Pueblo Int'l, Inc., 135 D.P.R. 500 (1994); E.L.A. v. Soto Santiago, 131 D.P.R. 304, 317 (1992) esc. 6.  Así pues, es necesario recurrir al Art. 6.06 de la Ley de Municipios Autónomos, supra, 21 L.P.R.A. sec. 5206, sobre notificación de deficiencias de contribuciones sobre la propiedad mueble. Dicho Artículo dispone, en lo pertinente, lo siguiente:

> (a) En cualquier momento, después de rendida la planilla de contribución sobre la propiedad mueble, pagada o no la contribución computada, el Centro de Recaudación podrá examinar y determinar el importe correcto de la contribución.
>
> (b) Si en el caso de cualquier contribuyente el Centro de Recaudación determinare que hay una deficiencia con respecto a la contribución impuesta por esta parte, ya fuere por razón de haberse determinado el valor tributable de la propiedad incorrectamente, por haberse omitido propiedad o cualquier otro motivo, el Centro de Recaudación notificará al contribuyente dicha deficiencia por correo certificado.  El contribuyente podrá, dentro de los treinta (30) días siguientes a la fecha de depósito de la notificación, solicitar del Centro de Recaudación, por escrito, reconsideración de dicha deficiencia y vista administrativa sobre la misma. Si el contribuyente no solicitare reconsideración en la forma y dentro del término aquí dispuesto, o si habiéndola solicitado se confirmare en todo o en parte la deficiencia notificada, el Centro de Recaudación notificará, cualquiera que sea el caso, su determinación final al contribuyente por correo certificado con expresión del monto de la fianza que deberá prestar el contribuyente a favor, ante y sujeta a la aprobación del Centro de Recaudación, si deseare recurrir ante el Tribunal Superior[12] [Tribunal de Primera Instancia] contra dicha determinación de deficiencia....
>
> (C) Si el contribuyente no estuviere conforme a la determinación final de deficiencia notificádale por el Centro de Recaudación, podrá recurrir al Tribunal Superior dentro del término de treinta (30) días a partir de la fecha de depósito de la determinación final del Centro de Recaudación....  (Énfasis suplido.)

---

[11]   El Art. 7 del Código Civil; 31 L.P.R.A. sec. 7, en lo pertinente dispone lo siguiente:

> El tribunal que rehuse fallar a pretexto de silencio, obscuridad, o insuficiencia de la ley, o por cualquier otro motivo, incurrirá en responsabilidad.
>
> Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos.  (Énfasis suplido.)

[12]   "Tribunal Superior" fue sustituido por "Tribunal de Primera Instancia" a tenor con el Plan de Reorganización Núm. 1 de 28 de julio de 1994, conocido como la "Ley de la Judicatura de Puerto Rico de 1994", según enmendada, 4 L.P.R.A. sec. 22 et seq.

De otra parte, a través de nuestra jurisprudencia hemos reiterado que cuando un estatuto <u>expresamente</u> otorga a las partes el derecho a revisar una determinación ante el foro judicial, es "crucial el que se notifique **adecuadamente** a todas las partes cobijadas por tal derecho." <u>IM Winner, Inc.</u> v. <u>Mun de Guayanilla</u>, Op. de 17 de marzo de 2000, 151 D.P.R. __ (2000), 2000 JTS 86, pág. 1133 y casos allí citados. (Énfasis en el original.)

A la luz de todo lo anterior, resolvemos que la notificación final de una determinación administrativa de un funcionario municipal autorizado, que activa el plazo de caducidad establecido en el Art. 15.002 de la Ley de Municipios Autónomos, supra, es aquella que se notifica a todas las partes y/o a sus representantes legales **por escrito** y **por correo certificado** luego de haberse dilucidado el asunto en un procedimiento administrativo en donde las partes afectadas estén cobijadas por las garantías mínimas del debido proceso de ley. El documento advertirá además que de la decisión final del municipio se podrá recurrir a la Sala Superior con competencia, del Tribunal de Primera Instancia, dentro del término de veinte (20) días contados a partir de la fecha de depósito en el correo de la determinación administrativa.

No cabe duda que la concesión por ley del derecho a revisar judicialmente la determinación administrativa final de un funcionario municipal, exige una notificación adecuada para garantizar tal derecho.

Cabe señalar, sin embargo, que para que esta notificación final sea válida y active el término de caducidad dispuesto por ley, además de los requisitos antes establecidos es **indispensable** que el Municipio (si aún no lo tiene) elabore un procedimiento administrativo estructurado en el cual las partes involucradas puedan esgrimir sus derechos y defensas, particularmente en casos como el que nos ocupa en que, como ya expresáramos, no existía un procedimiento adecuado para lo que se pretendía dilucidar (la procedencia en torno a la imposición de arbitrios). Dicho procedimiento puede ser análogo al establecido en el Art. 6.06 de la Ley de Municipios Autónomos, supra, antes citado, o al que dispone la Sec. 651o de la Ley de Patentes Municipales; modificados conforme a la particularidad del asunto.[13]

_____

[13] La Sec. 651o de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651 <u>et seq</u>. en lo que aquí respecta dispone que:

(1) Si en el caso de cualquier persona el Director de Finanzas determinare que hay un deficiencia con respecto a la patente impuesta por autorización de las secs. 651 et seq. de este título, el Director de Finanzas notificará a la persona dicha deficiencia

VI

En el caso de autos el Municipio le informó mediante carta a Río Construction, que tenía treinta (30) días para solicitar vista administrativa y presentar argumentos contra la imposición contributiva.  El 26 de mayo de 1994, el día señalado para la vista administrativa, se celebró una reunión con el fin de dilucidar la controversia sobre el cobro de arbitrios de construcción impuesta a Río Construction.  **En la misma estuvieron presentes la Sra. Alma Umpierre, Directora de Finanzas, el Lcdo. Mario Edmundo Vélez, en representación de Río Construction y el Lcdo. Ovidio Zayas Rivera en representación del Municipio.  En dicha reunión los representantes de Río Construction y del Municipio acordaron, con la aprobación de la Directora de Finanzas, que en vista de que no había un procedimiento administrativo prescrito para lo que se pretendía dilucidar, Río Construction habría de solicitar sentencia declaratoria al Tribunal de Primera Instancia, donde se**

---

por correo certificado, y la persona podrá, dentro de los treinta (30) días siguientes a la fecha del depósito en el correo de dicha notificación o dentro de la prórroga que a tal fin le concede el Director de Finanzas, solicitar de éste, por escrito, la reconsideración de dicha deficiencia o pedir una vista administrativa en relación con la misma.  Si la persona no solicitare reconsideración en la forma y dentro del término aquí dispuesto, o si habiéndola solicitado, se confirmare en todo o en parte la deficiencia notificada, el Director de Finanzas notificará por correo certificado, en ambos casos, su determinación final a la persona con expresión del monto de la fianza que deberá prestar la persona si deseare recurrir ante el Tribunal de Primera Instancia contra dicha determinación de deficiencia....

(2)  Cuando una persona no estuviere conforme con una determinación final de deficiencia notificádale por el Director de Finanzas en la forma provista en la cláusula (1) de esta sección, dicha persona podrá recurrir contra esa determinación ante el Tribunal de Primera Instancia, radicando demanda en la forma provista por ley dentro del término de treinta (30) días a partir de la fecha del depósito en el correo de la notificación de la determinación final, previa prestación de fianza a favor del Director de Finanzas, ante éste, y sujeta a su aprobación por el monto expresado en la mencionada notificación de la determinación final,....

(3)  La persona podrá radicar la demanda a que se refiere la cláusula (2) en la sala del Tribunal de Primera Instancia a la cual corresponda el municipio de su residencia, y no obstante cualesquiera otras disposiciones de ley sobre el traslado de causas o lugar de juicio, tendrá derecho, por razón de la conveniencia de los testigos, a que su caso se litigue en dicha sala del Tribunal de Primera Instancia....

(4)

**podrían resolver las controversias jurídicas que se hubieren podido adjudicar a nivel administrativo.**   En su escrito el Municipio sostuvo, que como cuestión de hecho, el 26 de mayo de 1994, la Directora de Finanzas se reafirmó en la notificación de deficiencias y en su postura de que Río Construction debía al Municipio la cantidad reclamada.   Continuó arguyendo que a la luz de lo resuelto en Nogama Const. Corp. v. Mun. de Aibonito, supra, esa afirmación, **aunque de manera verbal**, constituyó en términos claros e inequívocos la determinación final requerida para activar el plazo de caducidad del Art. 15.002 de la Ley de Municipios Autónomos, supra.   Concluyó que, por lo tanto, la solicitud de sentencia declaratoria de Río Construction interpuesta el 29 de septiembre de 1994, fue presentada fuera del término de caducidad de veinte (20) días y el tribunal no tenía jurisdicción para atender la misma.   No podemos avalar la posición del Municipio.

VII


"El debido proceso de ley requiere, como regla general, la notificación o citación real y efectiva, ajustada a los preceptos estatutarios aplicables. Como método alterno, la notificación constructiva, incluso por inferencias, es de excepción; se justifica en circunstancias peculiares ....   No podemos permitir que un eslabón de tanta envergadura en el debido proceso de ley tome o adopte una configuración laxa basada en una mera conclusión especulativa de que se tenía conocimiento de la decisión administrativa."   Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 421 (1995).

Así pues, al aplicar la norma sobre la notificación que hemos establecido por analogía, utilizando lo dispuesto en el Art. 6.06 o en la Sec. 6510 antes citados a los hechos de este caso, es forzoso concluir que la **reafirmación verbal** hecha por la Directora de Finanzas sobre las deficiencias a la que hace referencia el Municipio, no constituyó una notificación final capaz de activar el término provisto por el Art. 15.002, supra.   Esto por no haber sido notificada ni tan siquiera de la forma que dispusimos en Nogama Const Corp. v. Mun. de Aibonito, supra.[14]   Por consiguiente, la falta de notificación adecuada impidió que se activara el plazo fatal de caducidad de veinte (20)

---

[14]    En Nogama Const. Corp. v. Mun. de Aibonito, supra, pág. 11960, resolvimos que la notificación de deficiencia contributiva al menos, debía ser "... firmada por el funcionario municipal a cargo de la dirección de la unidad administrativa correspondiente, el Director de Finanzas."

días.  En consecuencia, el tribunal de instancia tenía jurisdicción para entender en la solicitud de sentencia declaratoria presentada por Río Construction.

Aclarado lo anterior, nos limitaremos a evaluar los únicos dos (2) errores presentados por Río Construction.

## VIII

Respecto al primer señalamiento de error Río Construction sostiene, que a los fines de determinar si la imposición de una ordenanza municipal para el cobro de arbitrios de construcción es aplicable o no en los contratos de obras de gobierno, la fecha que hay que tomar en consideración es la de la subasta y no la de la firma del contrato.  Aduce, que de aceptarse su posición, los arbitrios reclamados bajo la Ordenanza Núm. 37, Serie: 1989-90 (vigente a la fecha de la subasta) según determinados por el Tribunal de Circuito no le aplicarían a la obra, ya que la misma se subastó el 28 de octubre de 1992, y hasta el 17 de noviembre de 1992 los municipios estaban impedidos de imponer arbitrios y patentes sobre una misma actividad económica.

Por su parte, el Municipio sostiene que la fecha determinante lo es la de la firma del contrato.  Por tal razón aduce, que procede la imposición de la doble tributación.

## IX

En nuestro  ordenamiento jurídico impera la norma de que, "[l]os contratos se perfeccionan por el mero consentimiento .... "  Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375; y que éste "...se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato."  Art. 1214 del Código Civil; 31 L.P.R.A. sec. 3401.

En esencia el proceso de negociación da inicio con la oferta, que constituye  "...una proposición unilateral que una de las partes dirige a la otra para celebrar con ella un contrato.  No es un acto preparatorio del contrato, sino una de las declaraciones contractuales.  Así, pues, sólo hay oferta cuando el contrato puede quedar cerrado con la sola aceptación de la otra parte, sin necesidad de una ulterior declaración del que hizo la oferta."  J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Barcelona, Ed. Bosch,

1988, T. II, Vol. I, pág. 172.  En otras palabras, habrá oferta: "...cuando en ella se contengan los elementos esenciales para la formación del contrato, de tal modo que no sea necesario para saber su contenido un nuevo acuerdo de las partes cuando se haya producido la aceptación."  B. Moreno Quesada, La Oferta del Contrato, Barcelona, Colección Nereo, 1963, págs. 64-65.

En los casos de contratación por pública subasta, la adjudicación de la buena pro depende de la existencia de una oferta que contenga todos los elementos esenciales para la conclusión del contrato.  Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 523 (1982).  En tales casos, nos dice Puig Brutau, el contrato queda perfeccionado al hacerse la mejor postura o al hacerse la proposición más ventajosa.  El remate o adjudicación confirma o ratifica la celebración o perfeccionamiento del contrato.  Puig-Brutau, ob. cit., pág. 178.

A la luz de estos principios, podemos entonces decir, que **el acto de adjudicar la buena pro al licitador más bajo crea**" ...**una relación contractual... que no puede ser resuelta unilateralmente o arbitrariamente**." (Énfasis nuestro.)  Cancel v. Municipio de San Juan, 101 D.P.R. 296, 299 (1973).  En consecuencia, la fecha determinante para la aplicación de la ordenanza es aquella en la que se adjudicó la buena pro al licitador más bajo.

No obstante lo anterior, el Tribunal de Circuito concluyó que la fecha determinante para la aplicación de la ordenanza que autorizó al Municipio a imponer los arbitrios de construcción en una obra pública "es la fecha de la firma u otorgación del contrato".  Señaló que no se puede perder de perspectiva que en nuestro derecho vigente, una entidad gubernamental posee la facultad "... de revocar la adjudicación de la subasta antes de que se formalice el contrato correspondiente ya que la adjudicación no obliga a la agencia hasta que se formalice por escrito el contrato de ejecución de obra conteniendo todos los requisitos legales."  (Énfasis Suplido.)  Justiniano v. E.L.A., 100 D.P.R. 334, 340 (1971).

Este razonamiento, sin embargo, no justifica que la fecha para determinar el arbitrio correspondiente deba ser la del contrato y no la de la adjudicación de la subasta.  Si el municipio, en el ejercicio de su facultada revoca la adjudicación de la subasta, no otorga el contrato, no hay arbitrio que imponer; pero si no revoca la adjudicación de la subasta, debe atenerse al arbitrio que el propio municipio había impuesto por ordenanza al momento de la adjudicación de la subasta.

Apoya nuestra conclusión el hecho de que cuando el contratista hace su oferta toma en consideración el monto de las imposiciones contributivas, sean éstas en forma de arbitrios, patentes o de cualquier otra forma, a los fines de determinar el precio de la obra, lo cual incluye todos los costos más el margen de ganancia. La forma más fácil que tiene un Municipio para (1) lograr un precio real más bajo al cotizado en la oferta del contratista que obtuvo la buena pro, ó (2) para lograr que el contratista que hizo la oferta responsable más baja retire la misma con las resultantes consecuencias en contra del interés público (proliferación de pleitos, tardanzas en el comienzo de la obra, favoritismo a otros postores con precios más altos) es la de adoptar ordenanzas impositivas después de adjudicada la subasta pero antes de firmarse el contrato.

De otra parte, no se podría reconocer como final y obligatoria la oferta del contratista que obtuvo la buena pro ya que la variación hecha por la otra parte contratante de las circunstancias que influyeron en la voluntad del primero al cotizar el precio, podría tener el efecto de anular su oferta. La misma entonces no contendría todos los elementos esenciales para la formación del contrato. Además, las partes licitadoras no deben estar sujetas a la incertidumbre de un cambio en los arbitrios luego que se han movido a licitar conociendo cuál era el arbitrio al momento de formalizarse su oferta.

A la luz de todo lo anterior, _ratificamos que en el caso que hoy nos ocupa,_ la fecha determinante para la aplicación de una ordenanza municipal que autoriza a un municipio a imponer arbitrios de construcción, es la fecha en que se adjudicó la buena pro al licitador más bajo.[15] Es precisamente cuando

---

[15] Es menester señalar que la Legislatura aprobó la Ley Núm. 199 de 6 de septiembre de 1996 y la Ley Núm. 130 de 17 de julio de 1998, las cuales en su sec. 2 enmendaron el inciso (d) del Art. 2.002, de la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4052(d) y dispusieron, en lo aquí pertinente, lo siguiente:

(d) Imponer y cobrar contribuciones, derechos, licencias, arbitrios de construcción y otros arbitrios e impuestos, tasas y tarifas razonables dentro de los límites territoriales del municipio, compatibles con el Código de Rentas Internas y las leyes del Estado Libre Asociado de Puerto Rico, incluyendo, sin que se entienda como una limitación, por el estacionamiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, por la construcción de obras y el derribo de edificios, por la ocupación de vías públicas municipales y por el recogido y disposición de desperdicios.

El arbitrio de construcción municipal será el vigente a la fecha de cierre de la subasta debidamente convocada o a la fecha de la adjudicación del contrato para aquellas obras de construcción

se adjudica la buena pro que surge la relación contractual entre las partes, la cual no puede ser resuelta o alterada unilateralmente por el Municipio.

Conforme a los principios esbozados atendemos el segundo error señalado por Río Construction.   Veamos pues.

X

En el segundo señalamiento, Río Construction sostiene que debido a que en su caso la subasta fue celebrada y adjudicada con anterioridad al 17 de noviembre de 1992 (fecha en la que entró en vigor la Ley Núm. 93 de 17 de noviembre de 1992, 21 L.P.R.A. secs. 651-652), y que la construcción de la obra fue objeto de tributación a tenor con la Ley de Patentes Municipales, supra, la imposición del arbitrio a su empresa bajo la Ordenanza Núm. 37, serie 1989-90 constituyó una doble tributación no permitida por ley.   Tiene razón Río Construction.

El 17 de noviembre de 1992 se aprobó la Ley Núm. 93 de 17 de noviembre de 1992, supra.   A partir de la aprobación de dicha ley, se autorizó expresamente a los municipios al cobro de patentes y arbitrios (el esquema de doble tributación) sobre un mismo evento económico.[16]  Véase, además: <u>Las</u>
_____

> que no requieran subastas.   En los casos de órdenes de cambio, se aplicará el arbitrio vigente al momento de la fecha de petición de la orden de cambio.   Entendiéndose, que toda obra anterior se realizó a tenor con los estatutos que a través de los años han autorizado el cobro de arbitrios de construcción en los municipios. (Énfasis suplido.)

Es de notar, sin embargo, que esta Ley no aplica al caso de autos ni a aquellos casos anteriores a la aprobación de dicha legislación.

[16]   Sobre el particular la Ley Núm. 93 de 17 de noviembre de 1992, Leyes de Puerto Rico, Parte 1, 1992, en lo aquí pertinente, dispone lo siguiente:

> La facultad que por esta ley [las secs. 651a a 652y de este título] se confiere a los municipios para imponer patentes sobre el volumen de negocios realizado por personas o entidades dentro de sus límites territoriales en forma alguna se interpretará que priva o limita las facultades de los municipios para imponer contribuciones, arbitrio, impuestos, licencias, derechos, tasas y tarifas  sobre cualesquiera otros renglones, no incompatibles  con la tributación impuesta por el Estado, cuando los objetos y actividades sujetos a tributación se lleven a cabo dentro de los límites territoriales del municipio.  La tributación de un objeto o actividad se considerará un acto separado y distinto no incluido o inherente al tributo que se impone sobre el volumen de negocios que sirve de base para imponer

Piedras Const. Corp. v. Mun. de Dorado, supra. Es decir que hasta el 17 de noviembre de 1992, los Municipios no estaban autorizados a la doble tributación.

En nuestro caso la adjudicación de la Subasta a Río Construction tuvo lugar el 28 de octubre de 1992. Como ya expresáramos, en dicha fecha estaba vigente **únicamente** la Ordenanza Núm. 37, Serie 1989-90. Dicha Ordenanza disponía para el pago de arbitrios por el uno por ciento (1%) del costo total de la obra. **Al haber determinado la fecha de la subasta como vinculante para propósitos de cobro de arbitrios en obras de construcción, no procede el pago de arbitrios en el presente caso**. Ello es así, pues a la luz de lo resuelto en Las Piedras Construction Corp. v. Mun. de Dorado, supra, los municipios no tenían potestad para fijar el pago de arbitrios antes de 17 de noviembre de 1992, fecha en la cual la Asamblea Legislativa, le confirió dicha facultad. Tampoco procedía el cobro de la Ordenanza Núm. 37, serie 1993-94 **ya que ciertamente a la fecha de la subasta dicha ordenanza no existía**.[17] En consecuencia, todo intento de cobrar arbitrios en virtud de una ordenanza anterior al 17 de noviembre de 1992 es improcedente. Este curso decisorio está acorde con lo resuelto en Nogama Const. Corp. v. Mun. de Aibonito, supra, y Las Piedras Const. Corp. v. Mun. de Dorado, supra.

XI

Por los fundamentos antes expuestos, se expide el auto de certiorari solicitado, se dicta sentencia revocando las emitidas por el Tribunal de Circuito de Apelaciones, Circuito Regional VI y el Tribunal de Primera Instancia, Sala Superior de Caguas, y se devuelve el caso para que se actúe de forma compatible con lo aquí resuelto.

MIRIAM NAVEIRA DE RODON
Juez Asociada

---

las patentes. (Énfasis nuestro.). Cabe señalar que actualmente la disposición antes citada aparece prácticamente inalterada. Sólo se sustituyó "esta ley" por "las secs. 651ª a 651y de este título".

[17] Como correctamente resolvió el Tribunal de Circuito de Apelaciones en su sentencia de 17 de septiembre de 1996.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Río Construction, Corp.

    Peticionario

       v.                              CC-1996-373

Municipio de Caguas

    Recurrido


SENTENCIA


San Juan, Puerto Rico a 25 de octubre de 2001


      Por los fundamentos expuestos en la Opinión que antecede, se expide el auto de certiorari solicitado, se dicta sentencia revocando las emitidas por el Tribunal de Circuito de Apelaciones, Circuito Regional VI y el Tribunal de Primera Instancia, Sala Superior de Caguas, y se devuelve el caso para que se actúe de forma compatible con lo aquí resuelto.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente con opinión escrita. El Juez Asociado señor Rivera Pérez está inhibido.


                    Isabel Llompart Zeno
              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Río Construction, Corp.

    Peticionario

       vs.                          CC-1996-373   CERTIORARI

Municipio de Caguas

    Recurrido


Opinión Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 25 de octubre de 2001.

Disiento de los dos dictámenes emitidos por una mayoría del Tribunal en el caso de autos, que al fin se resuelve **cinco años después** de haberse presentado el recurso ante esta Curia.

Disiento, en primer lugar, del decreto de la mayoría del Tribunal en cuanto a cuál es la fecha determinante para la imposición de un arbitrio municipal de construcción. En mi criterio, esa fecha es aquella en que se otorga el contrato de construcción, y no la fecha en que se adjudica la subasta pública correspondiente. Es al otorgarse el contrato en sí que quedan definitivamente plasmadas las respectivas obligaciones de las partes respecto a la construcción de la obra contemplada. Se

trata evidentemente de un evento más cierto que el de la adjudicación de la subasta en lo que respecta a los términos precisos y concretos de las obligaciones de las partes, y por ende, el más apropiado para la imposición del arbitrio.

Tampoco estoy de acuerdo con la decisión de la mayoría de que la notificación personal de una deficiencia contributiva, que la Directora de Finanzas del Municipio le hizo al recurrente, no es adecuada porque no se hizo por escrito y por correo certificado. Me parece que la mayoría, por puro _fiat_, impone aquí su apreciación sobre el _medio más seguro para notificar_, cuando la cuestión precisa a resolver era sólo _si la notificación personal fue suficiente_.

La disposición en cuestión, el Art. 15.002, de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4702, dispone en lo pertinente, que "la acción judicial sólo podrá instarse dentro de los veinte (20) días siguientes a la fecha en que el acto... administrativo se haya realizado o que _la... orden se haya... comunicado a la parte querellante_. (Énfasis suplido). Con arreglo a los términos claros y literales de esta disposición, parecería que la notificación personal, que hizo la funcionaria municipal en este caso, cumple con lo que dicha disposición requiere, de que la orden se haya comunicado a la parte querellante. Todo lo requerido es que la orden _se comunique_, y ello ocurrió aquí.

La mayoría del Tribunal, no explica por qué una notificación personal no cumple con el requisito de ley aludido de que la orden "se haya comunicado". Se limita a señalar que dicha disposición no fija la manera específica en que se habrá de efectuar la notificación contemplada. Por ello, adopta "por analogía", el requisito de notificación formal que expresamente se dispone _en otra ley_, que trata sobre las contribuciones sobre la propiedad mueble que puede cobrar una nueva entidad pública conocida como el Centro de Recaudación de Ingresos Municipales (CRIM). De nuevo, la mayoría no explica satisfactoriamente por qué es pertinente tal "analogía". Tampoco explica por qué no se acude a otras disposiciones de la propia Ley de Municipios Autónomos que tratan sobre la forma de

efectuar notificaciones, como la del artículo subsiguiente al que aquí nos concierne, el Art. 15.0003, 21 L.P.R.A. sec. 4703(a), que habla de notificar "en cualquier forma fehaciente reconocida en derecho"; o la del Art. 6.006, 21 L.P.R.A. sec. 4256 que señala que se dará por cumplido el requisito de promulgar cualquier acto municipal "con la ...notificación... por cualquier medio del acto municipal de que se trate". En esencia, pues, la mayoría, por puro _fiat_, opta por requerir aquí la manera más rigurosa de efectuar una notificación, sin tomar en cuenta la evidente intención legislativa de darle a los municipios autónomos bastante _flexibilidad_ para efectuar sus actuaciones.

La actuación de la mayoría, claro está, estaría justificada si por razones constitucionales la notificación en cuestión tuviese que hacerse por escrito y por correo certificado.  Pero no existe tal exigencia constitucional. Como surge de los propios precedentes citados por la mayoría, todo lo que el debido proceso de ley requiere es que la persona afectada pueda enterarse de la decisión que se ha tomado en su contra. Ello ocurrió aquí. La parte afectada se enteró de la decisión en su contra, debido a que se le notificó personalmente. La notificación personal puede no ser la manera más segura o formal de lograr el propósito de comunicar una decisión gubernamental, pero ello de por sí no significa que es jurídicamente deficiente.

Como la mayoría resuelve de otro modo, disiento.


Jaime B. Fuster Berlingeri
Juez Asociado