Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| RAFAELA PEÑA BÁEZ<br><br>Recurrente<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS<br><br>Recurridos | KLRA202500322 | ***Revisión Administrativa***<br>Procedente de la Autoridad de Acueductos y Alcantarillados<br><br>Caso Núm.: 65693379<br><br>Sobre:<br>Factura |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2025.

El 2 de junio del año en curso, la señora Rafaela A. Peña Báez, señora Peña Báez o recurrente, presentó un recurso de revisión administrativa acompañado de una Solicitud y Declaración para que se exima de pago de arancel por razón de indigencia. La señora Peña Báez, en su recurso no presenta un señalamiento de error conforme las formalidades reglamentarias. Es decir, no presenta un señalamiento breve y conciso de los errores que a juicio de la parte recurrente cometió el organismo, agencia o funcionario recurrido o funcionaria recurrida, así como una discusión de los errores señalados, incluyendo las disposiciones de ley y la jurisprudencia aplicables.[1] No obstante, colegimos que lo que la señora Peña Báez nos solicita es la revisión judicial de una notificación emitida por la Autoridad de Acueductos y Alcantarillados, en adelante AAA, que

---

[1] 4 LPRA Ap. XXII-B, regla 59 (c) (e) (f).

Número Identificador

SEN2025_____

deniega la solicitud de revisión de dos facturas objetadas por la recurrente. En específico, la factura del 6 de diciembre de 2024 por $84.54 por el periodo de 1 de octubre de 2024 hasta el 4 de diciembre de 2024. Además, objeto también la factura del 5 de enero de 2025 por la cantidad de $74.29. Nos suplica la señora Peña Báez nuestra intervención, primeramente alegando que, la notificación denegatoria de su apelación por parte de la AAA no le fue remitida. Aduce que no fue hasta que se personó a las oficinas de AAA que le indicaron que se le había notificado la denegatoria y por ende los términos para solicitar reconsideración habían vencido. La recurrente insiste en que no se le notificó nunca determinación final sobre las objeciones a sus facturas. Afirma que la facturación es incorrecta pues ella reside en una propiedad por sección 8 y el arrendador se mantiene pendiente de que la propiedad opere adecuadamente. Asegura que no realizó ese consumo y que no tuvo avería o salidero pues mantiene todo en orden. Con su recurso acompaña una comunicación de 30 de abril de 2025 dirigida a la recurrente de AAA. En la comunicación, la agencia reconoce que recibió una solicitud de investigación de la factura del 6 de diciembre de 2024 por $84.24 e indica que no procedía el ajuste. Advirtió a la señora Peña Báez que tenía un término de 10 días para pagar o solicitar una reconsideración y vista administrativa de no estar de acuerdo, conforme la "Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales, 27 LPRA sec. 262 *et seq.*[2] Inconforme, la recurrente comparece ante este foro por derecho propio.

**I**

> "Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales" Ley Núm. 33 de 27 de junio de 1985, según enmendad.

---

[2] Apéndice recurso de apelación, carta de 30 de abril de 2025. Los anejos presentados no fueron numerados conforme las disposiciones reglamentarias.

La Ley Núm. 33, supra, reconoce que los servicios de acueducto y/o alcantarillado sanitario constituyen una necesidad esencial en la vida del pueblo. Por tal razón, toda suspensión o interrupción de esos servicios puede representar una seria amenaza a la salud y al bienestar de los consumidores. Se reconoce el derecho de las instrumentalidades públicas a suspender la prestación de servicios en aquellos casos en que los abonados o usuarios dejen de pagar los cargos y tarifas que se les haya facturado, pero, por otro lado, se reconoce también, los derechos de los abonados o usuarios a cuestionar la corrección de lo facturado y de los procedimientos que utilicen dichas corporaciones públicas para suspender el servicio prestado. La legislación exige, como parte del debido proceso de ley, la disponibilidad de un procedimiento administrativo informal para que el abonado tenga la oportunidad de presentar sus objeciones a las facturas a un empleado de la empresa designado para ese propósito y con autoridad para corregir los errores. Exige, también, que las empresas notifiquen al abonado o usuario la disponibilidad de ese procedimiento de una manera clara y descriptiva. Es decir que deben explicar y divulgar de la manera más efectiva tanto los derechos del consumidor como las facultades de la agencia en el curso del proceso, y los pasos a seguir con el abonado, explicándole no sólo la dinámica del proceso sino también su contenido. Para asistir a dichas instrumentalidades en el establecimiento de un procedimiento razonable dispuso unos requisitos procesales mínimos con los cuales deberán cumplir. Específicamente se consignaron los requisitos procesales mínimos siguientes; que el abonado o usuario recibirá, con tiempo suficiente para objetarla, una notificación de suspensión del servicio, que tendrá derecho a un procedimiento administrativo para protestar de la anunciada suspensión y que la agencia divulgará de manera efectiva y de alcance a todo abonado la descripción en contenido y

forma del procedimiento para objetar una facturación por servicios.

Véase Exposición de Motivos Ley 33-1985, según enmendada.

El artículo 3 de la Ley Núm. 33 dispone:

Toda autoridad, corporación pública, alianza público-privada participativa, u otra instrumentalidad gubernamental que provea servicios esenciales a la ciudadanía dispondrá de un procedimiento administrativo para la suspensión del servicio por falta de pago que deberá ajustarse para conceder los mecanismos y garantías mínimos al abonado, conforme al procedimiento dispuesto a continuación:

(a) A partir del envío de una factura de cobro por concepto de pagos de tarifas, derechos, rentas, u otros cargos facturados por servicios esenciales, el abonado tendrá veinte (20) días para pagar u objetar y solicitar una investigación de la misma ante el funcionario designado en la oficina local donde ubica la estructura que recibe servicio, quien estará facultado para corregir errores o sobrecargos.

La objeción y solicitud de investigación podrá solicitarse mediante correo, teléfono, fax, internet y aplicaciones móviles, siempre y cuando la misma se someta a través de las direcciones y/o números específicos provistos por la autoridad, instrumentalidad gubernamental, corporación pública, y/o alianza público-privada participativa, según corresponda, para estos propósitos.

(b) La autoridad, instrumentalidad gubernamental, corporación pública, y/o alianza público-privada participativa, deberá concluir la investigación e informarle el resultado al abonado dentro de los treinta (30) días de la objeción original.

El resultado de la investigación se le notificará al abonado por escrito quien, si el resultado de la investigación le es adverso, tendrá diez (10) días a partir de la notificación para pagar la factura o para solicitar una reconsideración de esa decisión y vista administrativa ante el director ejecutivo regional de la autoridad concernida.

(c) En ningún momento mientras se desarrollen estos procedimientos administrativos la autoridad, instrumentalidad gubernamental, corporación pública, y/o alianza público-privada participativa, podrá suspender el servicio.

(d) Si el abonado solicita la reconsideración y vista administrativa dispuesta en el inciso (b) anterior, deberá pagar, previo a la celebración de la vista, una cantidad igual al promedio de la facturación de consumo mensual o bisemanal, según fuere el caso, tomándose como base el historial de consumo del abonado durante los 12 meses precedentes. En los casos de abonados con menos de 12 meses de servicio, se considerará para el promedio de la facturación el tiempo durante el cual el servicio haya sido utilizado.

(e) En esta última etapa la autoridad, instrumentalidad gubernamental, corporación pública, y/o alianza público-privada participativa, podrá designar un abogado debidamente admitido a la profesión legal en Puerto Rico, pero que no sea empleado de la misma, para que actúe como examinador o árbitro y dilucide los planteamientos del abonado, dentro de los treinta (30) días siguientes a la fecha en que hubiere sometido el caso. Dicho término es de cumplimiento estricto, el cual podrá ser prorrogable hasta un máximo de 15 días adicionales únicamente mediando justa causa.

(f) Si el examinador o árbitro resuelve en contra del abonado y confirma la exigibilidad del pago de la factura, el abonado deberá pagar el balance de la deuda en un plazo de veinte (20) días a partir de la notificación de la decisión.

La autoridad, instrumentalidad gubernamental, corporación pública, y/o alianza público-privada participativa, establecerá un plan de pago de la deuda que no será mayor al 50% del total de la deuda.
Si el abonado no cumple con el pago, la autoridad, instrumentalidad gubernamental, corporación pública y/o alianza público-privada participativa podrá suspender, desconectar y dar de baja el servicio.

(g) El abonado tendrá veinte (20) días a partir de la notificación de la decisión del examinador o árbitro para recurrir en revisión al Tribunal de Apelaciones de Puerto Rico, conforme a las disposiciones de la Ley 201-2003, según enmendada, y a las Reglas Aplicables a los Recursos para la Revisión de Decisiones Administrativas ante el Tribunal de Apelaciones. El tribunal revisará la decisión del examinador a base del récord administrativo y sólo en cuanto a las conclusiones de derecho. Las determinaciones de hecho serán concluyentes para el tribunal si están sostenidas por evidencia sustancial.

(h) **La autoridad, instrumentalidad gubernamental, corporación pública y/o alianza público privada participativa, proveerá al abonado un enlace a través de los medios digitales, telefónicos o por correo postal, para informar el estado actualizado de la objeción del abonado en cada uno de los pasos establecidos en esta ley. Si cualquiera de las partes incumpliera con cualquiera de los términos dispuestos mediante esta ley, la controversia se resolverá a favor de la parte que se encuentre en cumplimiento. Énfasis nuestro.**

27 LPRA sec. 262b.

Puntualizamos que la instrumentalidad tendrá disponible para el abonado información que describa el funcionamiento de los contadores de acueductos, cómo el abonado puede interpretarlo, y cualquier otra información que la instrumentalidad estime

pertinente y que permita al cliente pagar u objetar una factura de manera informada. 27 LPRA sec. 262e.

**II**

De manera que podemos advertir que el proceso para objetar una factura de AAA, por ser un servicio esencial, está ampliamente reglamentado. En resumen, el abonado cuenta con 20 días, desde el envió de una factura, para pagar u objetar la misma. Si la objeta debe solicitar una investigación de la factura ante el funcionario designado en la oficina local de propiedad en la cual reciba servicio. Podrá hacerlo mediante correo, teléfono, fax o Internet, siempre y cuando la solicitud de investigación se presente a través de las direcciones y/o números específicos provistos por la Autoridad de Acueductos y Alcantarillados, para estos propósitos. La instrumentalidad deberá finalizar la investigación e informar el resultado al abonado dentro de los treinta (30) días a partir de la solicitud de investigación u objeción original. El resultado de la investigación se le notificará al abonado por escrito quien, si aún está inconforme, tendrá diez (10) días a partir de la notificación para pagar la factura o para solicitar la reconsideración de esa decisión y vista administrativa ante el director ejecutivo regional de la AAA. Cabe señalar que mientras se lleva a cabo el proceso antes descrito, no se puede suspender el servicio.

Ahora bien, cuando la objeción y solicitud de investigación llegue a la vista administrativa, el planteamiento del abonado deberá ser resuelto dentro dentro de los treinta (30) días siguientes a la fecha en que hubiere sometido el caso. Dicho término es de cumplimiento estricto, el cual podrá ser prorrogable hasta un máximo de 15 días adicionales únicamente mediando justa causa. Finalmente, de no proceder la objeción de la factura y el examinador o árbitro resolver en contra del abonado y confirmar la exigibilidad del pago de la factura, el abonado deberá pagar el balance de la

deuda en un plazo de veinte (20) días a partir de la notificación de la decisión.   La AAA vendrá obligada a establecer un plan de pago que no será mayor al 50% del total de la deuda, es decir, el abonado podrá pagar la mitad de la deuda y la otra mitad, a solicitud del abonado, tendrá que establecerse un plan de pago. Ahora bien, si el abonado no cumple con el plan de pago, AAA podrá suspender, desconectar y dar de baja el servicio.

Por último y no menos importante, el abonado tendrá veinte (20) días a partir de la notificación de la decisión del examinador o árbitro para recurrir en revisión al Tribunal de Apelaciones. En resumen, si aún después del proceso antes detallado, el abonado ha aprovechado todas las revisiones ante la AAA y aún está en desacuerdo con la factura podrá acudir ante el foro judicial quien revisara la decisión de AAA a base del récord administrativo, sólo en cuanto a las conclusiones de derecho; las determinaciones de hecho serán concluyentes para el tribunal siempre que estén sostenidas por evidencia sustancial. 27 LPRA sec. 262b (f) y (g).

### III

Notificación Defectuosa

La notificación defectuosa de una determinación tomada por las agencias administrativas priva de jurisdicción al foro revisor para entender el asunto en disputa, lo que impide que comience a transcurrir el término para recurrir de cualquier determinación administrativa y, consecuentemente, violenta el derecho al debido proceso de ley de la parte afectada. *St. James Security Services, LLC v. Autoridad de Energía Eléctrica*, 213 DPR 366, 380 (2023).

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG),[3] codifica las pautas mínimas que deben garantizar las agencias a las cuales le aplica, siendo una de

---

[3] Ley Núm. 38 de 30 de junio de 2017, según enmendada.

estas agencias, la AAA. 3 LPRA sec. 9603 (a); *St. James Security Services, LLC v. Autoridad de Energía Eléctrica*, supra; *Autoridad de Carreteras y Transportación v. Programa de Solidaridad UTIER*, 210 DPR 897, 907 (2022). En lo pertinente al asunto ante nuestra consideración, la LPAUG permite a las agencias que, en sus procesos adjudicativos las notificaciones que deben realizarse sean mediante correo electrónico o cualquier herramienta tecnológica que desarrolle la agencia o el Gobierno de Puerto Rico, y que esté disponible al público libre de costo. A esos fines, las agencias requerirán a todo ciudadano que presente una querella, petición o solicitud para el inicio de un procedimiento adjudicativo que provea la dirección de correo electrónico donde será notificado. La primera comparecencia de cualquier parte en un procedimiento adjudicativo deberá incluir, además de la información requerida en esta Ley, una dirección de correo electrónico donde recibirá las notificaciones. En aquellos casos en los que un ciudadano comparece por derecho propio, este pueda seleccionar entre la notificación electrónica o por correo regular, de acuerdo con su capacidad y acceso a herramientas electrónicas.3 LPRA sec. 9642. Si la agencia concluye un procedimiento adjudicativo en un caso en particular, terminará el procedimiento y notificará por escrito mediante correo ordinario o electrónico a las partes, y a sus abogados de tenerlos, su determinación, los fundamentos para la misma y el recurso de revisión disponible. 3 LPRA sec. 9656.

La importancia de la adecuada notificación como parte de un proceso adjudicativo ante una agencia estriba en que el derecho a cuestionar la determinación emitida [por] una agencia administrativa mediante la revisión judicial es parte del debido proceso de ley protegido por la Constitución de Puerto Rico. *Autoridad de Carreteras y Transportación v. Programa de Solidaridad UTIER, supra, pág. 908; Assoc. Condomines v. Meadows Dev.,* 190

DPR 843, 847 (2014). En la vertiente procesal el debido proceso de ley el exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo. *Román Ortiz v. Oficina de Gerencia de Permisos*, 203 DPR 947, 953 (2020).

Administrativamente el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. *Román Ortiz v. Oficina de Gerencia de Permisos*, supra, pág. 954; *Alamo Romero v. Adm. De Correción*, 175 DPR 314, 329 (2009). La flexibilización responde a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. En cambio, siempre se ha reiterado que el procedimiento adjudicativo administrativo *debe de ser justo en todas sus etapas* y tiene que ceñirse a las garantías mínimas del debido proceso de ley, conforme al interés involucrado y a la naturaleza del procedimiento que se trate. *Alamo Romero v. Adm. De Correción*, supra, pág. 330.

Una notificación defectuosa impide que comience a transcurrir el término para recurrir de cualquier determinación final, ya sea judicial o administrativa. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 502 (2019). La notificación ha de ser real y efectiva, ajustada a los preceptos estatutarios aplicables. Rio Const. Corp. V. Mun. De Caguas, 155 DPR 394, 405-406 (2001); *Asoc. Residentes v. Montebello Dev. Corp.*, 138 DPR 412, 421 (1995). En fin, la notificación eficaz será aquella que se haya hecho bien.

**IV**

En este caso, la señora Peña Báez, acompaña con su escrito una comunicación dirigida a su dirección residencial con fecha de 16 de diciembre de 2024. La querella objeto de esa comunicación es la número 000065693378. La comunicación reconoce que se

efectúo una objeción a la factura el 6 de diciembre de 2024 el día 12 del mismo mes y año, o sea oportunamente. Nótese que el abonado cuenta con 20 días para pagar la factura una vez recibida u objetarla. En la comunicación le advierte que después de una investigación, los cargos se sostienen por lo que de no estar de acuerdo cuenta con 10 días para presentar una revisión ante el funcionario autorizado regional e incluye una dirección postal. Al 16 de diciembre de 2024 el balance actual a pagar ascendía según la comunicación a $74.29. La advertencia en la comunicación cumple con los criterios de la Ley Núm. 33 toda vez que le indica el termino para solicitar la revisión de dicha determinación y el funcionario a quien deberá dirigir su objeción.

También, la recurrente incluye en el apéndice del recurso comunicación del Asesor Técnico de la AAA con fecha de 14 de enero de 2025 pero en donde identifican la reclamación con otro número, el 2025-01-0219. Reconocen la solitud de investigación hecha por la señora Peña Báez por la factura de 12/6/2024 y 1/5/2025, cada una por $74.29. En esta comunicación la AAA advierte a su cliente que al analizar el historial de lecturas y facturaciones no han encontrado errores que ameriten ajustes de acuerdo con las normas de la AAA. Enfatizan que el cargo facturado puede deberse a mayor consumo, deficiencia en las instalaciones interiores, ambas, responsabilidad del abonado. Le sugieren que contrate a un plomero que revise las instalaciones internas para identificar perdidas. Le advierten que de no estar de acuerdo cuenta con un término de 10 días a partir del recibo de la comunicación para solicitarle una revisión a la directora ejecutiva y acompañan la misma dirección postal de la comunicación anterior. Aunque la comunicación advierte el foro al cual dirigir la última revisión ante la agencia y el término para así hacerlo los fundamentos incluidos en la misma se distancian de los objetivos perseguidos por la Ley número 33, la

obligación de proveer al abonado la información que le permita al cliente objetar su factura de manera informada. Con mencionar que una revisión del historial de lecturas y facturación no amerita corrección, sin más, no es suficiente para el cliente entenderlo ni crear un récord que permita al foro judicial revisarlo. Distinto sería que la comunicación reflejará el historial de lectura y facturación, así como la información que describa el funcionamiento de los contadores de acueductos de manera que el cliente pudiera interpretarlo. Ciertamente, la obligación de incluir la información que explicará al cliente el sistema se debe incluir en la factura, pero de igual manera en las comunicaciones, toda vez que son los fundamentos de apoyo que sostienen la decisión y permiten al cliente conocer las razones que persuaden a la instrumentalidad a rechazar el ajuste y a la vez este puede sospesar si continua con el proceso o paga la deuda. Indicar que el alza en la factura **puede** deberse a mayor consumo o deficiencia en las instalaciones interiores es insuficiente cuando es la propia AAA quien mantiene todas las lecturas de los contadores. Un riguroso examen de una cuenta podría señalar en números y fechas el consumo certero, entonces no cabría hablar de posibilidades sino de realidades. A nuestro entender la conclusión de la investigación es eso, una conclusión que no está sostenida por unas determinaciones de hechos que permitan justipreciar la razonabilidad de la misma. Esta notificación es defectuosa.

Uno de los objetivos de la Ley Núm. 33, supra, era proveer a los abonados un procedimiento administrativo ágil que les permitiera atender las objeciones a la facturación en un término oportuno velando que el proceso les garantizará un debido proceso de ley. No obstante, buscando establecer la agilidad en el proceso para los abonados durante el procedimiento de reclamación de las

facturas, se enmendó la Ley Núm. 33 mediante la Ley 207-2024[4] para simplificar los pasos al objetar la facturación. Esto representaría una mejor respuesta en corto tiempo para los abonados y un proceso menos oneroso. Véase Exposición de Motivos de la Ley 207-2024. La vigencia de la Ley 207-2024 sería inmediata, o sea, al 17 de septiembre de 2024.

Nótese que cuando la señora Peña Báez presentó su objeción por primera vez el 12 de diciembre de 2024 ya la enmienda a la ley se encontraba en vigor. No obstante, AAA ignoró la misma y promovió un tramite incorrecto y, rechazado por los responsables de legislar quienes, precisamente y por encontrar que el tramite era largo y oneroso lo habían acortado. La notificación enviada a la señora Peña Báez es defectuosa por las siguientes razones: a) le presenta un tramite obsoleto y derogado para revisar su factura, b) carece de fundamentos que le permitan al abonado conocer los fundamentos de la determinación, c) en vez de dirigirla al Tribunal de Apelaciones la dirige al director ejecutivo de servicio al cliente para cuestionar la determinación. Como adelantamos, una notificación defectuosa impide que comience a transcurrir el término para recurrir de cualquier determinación final administrativa.

Cabe señalar que la recurrente también presentó una comunicación del 30 de abril de 2025 en la cual la AAA contesta sobre la querella número 2025-01-0219. Esta vez y contrario a la comunicación anterior, aducen que la factura objetada del 12/6/2024 asciende a $84.54 cuando en la comunicación anterior, del 14 de enero la reconocieron en $74.29. No obstante, deniegan la solicitud de reconsideración y vista administrativa por haber sido presentada tardíamente, según la comunicación el 28 de marzo de

---

[4] Aprobada el 17 de septiembre de 2024.

2025. En dicha comunicación le advierten a la señora Peña Báez que cuenta con un término de 20 días para acudir en revisión judicial al Tribunal de Apelaciones. Esta comunicación es inoficiosa por ser contraria a la Ley Núm. 33 según enmendada

Expuesto el trámite procesal anterior este recurso debe ser desestimado por prematuro. Las notificaciones del 14 de enero de 2025 y por ende la del 30 de abril del mismo año son defectuosas por ser contrarias a la ley, violando así el debido proceso de ley de la señora Peña Báez.

La jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes. *MCS Advantage Inc. v. Fossas Blanco,* 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 385–386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). La ausencia de jurisdicción "(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*". *MCS Advantage Inc., v. Fossas Blanco, supra,* pág. 145; *Beltrán Cintrón et al. v. ELA et al., supra,* págs. 101–102, citando a *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 372–373 (2018).

Es norma reitera da que un recurso prematuro, al igual que uno tardío, adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre". Su presentación "carece

de eficacia, por lo que no produce efecto jurídico alguno, ya que en el momento que fue presentado no había autoridad judicial alguna para acogerlo. *Báez Figueroa v. Administración de Corrección*, 2022 TSPR 51, pág. 7 (2022); *S.L.G. Szendry-Ramos v. F. Castillo,* 169 DPR 873, 883 (2007); Juliá *et al. v. Epifanio Vidal, S.E.,* 153 DPR 357, 366 (2001).

Como adelantamos, la recurrente presentó un recurso prematuro como consecuencia de unas notificaciones defectuosas efectuadas por la AAA, por lo que desestimamos el mismo por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones