Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO P/C DE LUMA ENERGY SERVCO LLC<br><br>**Apelados**<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE ISABELA REPRESENTADO POR EL HONORABLE ALCALDE MIGUEL E. MÉNDEZ PÉREZ<br><br>**Apelantes** | **TA2025AP00330** | ***APELACIÓN***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Aguadilla**<br><br>Caso Núm. **IS2024CV00247**<br><br>Sobre:<br>LEY DE MUNICIPIOS AUTÓNOMOS Y OTROS |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 27 de octubre de 2025.

La parte apelante, Municipio de Isabela, en adelante, Municipio, representado por el Honorable Alcalde Miguel E. Méndez Pérez, comparece ante nos para que se revise la *"Sentencia"* emitida, el 1 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, en adelante, TPI-Aguadilla. Mediante la misma, el Foro Primario declaró *"Con Lugar"* el recurso de revisión judicial promovida por la parte apelada, Autoridad de Energía Eléctrica de Puerto Rico, en adelante, AEE, por conducto de su operador y agente LUMA Energy Servco, LLC., en adelante, LUMA Energy.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I.**

El 12 de enero de 2023, el Municipio de Isabela remitió dos (2) comunicaciones dirigidas a la AEE y a LUMA Energy a la dirección **P.O. Box 363508, San Juan, Puerto Rico, 00936,** con la intención de informarles sobre la identificación de una posible condición de estorbo público en relación con el caso IS-262[1] y el caso IS-270.[2]

Dichas cartas no constituyeron una declaración formal de estorbo público, sino un requerimiento preliminar para identificar a las personas con interés en las propiedades y mitigar los riesgos asociados a los inmuebles señalados.[3] En las comunicaciones se concedió un término de veinte (20) días desde el recibo de la notificación de las cartas para oponerse a la presente determinación preliminar de la propiedad como estorbo público y/o solicitar una Vista ante un Oficial Examinador. Se advirtió que, de no presentarse oposición dentro del término concedido, el Municipio procedería con la declaración formal de estorbo público, la cual podría conllevar una multa administrativa de quinientos dólares ($500.00), así como multas escalonadas, obras de mitigación, gravámenes o hasta la demolición en caso de edificios en deterioro.[4]

Surge del expediente que el 7 de febrero de 2023 se remitieron por correo certificado las notificaciones de las querellas correspondientes a los casos IS-262[5] e IS-270[6], dirigida a LUMA ENERGY, a la dirección **P.O. Box 363508**, San Juan, Puerto Rico,

---

[1] Del expediente se desprende que el caso **IS-262** guarda relación con la propiedad identificada como edificio azul ubicado en la carretera PR-446, parcela número 026-044-310-29, según el Centro de Recaudación de Ingresos Municipales (CRIM), ubicada en la comunidad Llanadas, solar 2, Isabela, Puerto Rico. SUMAC entrada 1.

[2] Del expediente se desprende que el caso **IS-270**, guarda relación con la propiedad identificada como edificio crema sito en la Ave. Noel Estrada, parcela número 007-008-056- 05, según CRIM, ubicada en Bo. Bejucos, Isabela, Puerto Rico. SUMAC entrada 1.

[3] SUMAC, Entrada Núm. 1, anejo 3 y 4, pág. 1-7.

[4] *Íd.*, anejo 3 y 4, pág. 1-7.

[5] *Íd.*, anejo 3, pág. 8.

[6] *Íd.*, anejo 4, pág. 8.

00936-3508. En esa misma fecha, se enviaron comunicaciones de los casos IS-262 e IS-270[7] a la AEE, a la misma dirección postal provista para LUMA ENERGY.

Consta en autos que los acuses de recibo fueron efectuados de la siguiente manera:

1. El 8 de febrero de 2023, Ángel L. García firmó como receptor de la notificación enviada a AEE correspondiente al caso IS-262[8] y a LUMA ENERGY correspondiente al caso IS-270[9].

2. El 10 de febrero de 2023, Jean Paul Carazo firmó como receptor de la notificación dirigida a la AEE correspondiente al caso IS-270[10].

3. No obstante, del expediente no surge evidencia del receptor de la notificación enviada a LUMA ENERGY en el caso IS-262.

El 7 de marzo de 2023, el Municipio publicó un edicto en el periódico *Primera Hora* mediante el cual notificó la *declaración preliminar* de posibles estorbos públicos, incluyendo los casos IS-262[11] e IS-270[12]. En dicho edicto, se dispuso que, conforme a resoluciones y órdenes emitidas, a partir de la fecha de notificación, se impondría una multa mensual de carácter escalonado por cada mes de incumplimiento, comenzando en quinientos dólares ($500.00), entre otros remedios.

El 18 de mayo de 2023, el Municipio publicó un segundo edicto en el periódico *Primera Hora*, mediante el cual notificó la *declaración final* sobre posibles estorbos públicos respecto a los casos IS-262[13] e IS-270[14] y el 19 de mayo de 2023, emitió una *"Resolución Administrativa y Orden de Declaración Final de Estorbo Público"* firmada por el alcalde Méndez Pérez, respecto a estos. Mediante el mismo, se consignó un recuento de las gestiones

---

[7] SUMAC, Entrada Núm. 1, anejo 4, pág. 9.
[8] *Íd.,* anejo 3, pág. 9.
[9] *Íd.,* anejo 4, pág. 10.
[10] *Íd.*
[11] *Íd.,* anejo 3, pág. 10.
[12] *Íd.,* anejo 4, pág. 11.
[13] *Íd.,* anejo 3, pág. 15.
[14] *Íd.,* anejo 4, pág. 16.

realizadas y se concluyó que, tras la revisión del expediente, procedía declarar con lugar la determinación de estorbo público.[15]

Las notificaciones de la referida Resolución, correspondientes a los casos IS-262[16] e IS-270[17], se efectuaron el 10 de julio de 2023, mediante el envío de una copia fiel y exacta del documento a la AEE, *nuevamente* a la dirección **P.O. Box 363508**, San Juan, Puerto Rico, 00936-42676.

Consta en autos que el 13 de julio de 2023, el Banco Popular Internal Mail Dept. recibió ambos correos, los cuales fueron devueltos al apelante, que certificó su recepción el 18 de julio de 2023.[18] Además, se colocó un aviso en las propiedades correspondientes a los casos IS-262[19] e IS-270[20], mediante el cual se informó que la mismas habían sido declaradas estorbo público por el Municipio.

El 24 de agosto de 2023, la Lcda. Sariani E. Trejo Gutiérrez, en adelante, Lcda. Trejo, representante de LUMA Energy, informó mediante correo electrónico dirigido a Militza Salamanca Serrano, Ayudante Especial del alcalde Méndez Pérez, que había advenido en conocimiento de que la propiedad de la AEE, identificada con el número de catastro "007-008-056-05-000", había sido declarada estorbo público.[21] En la comunicación, solicitó información sobre el estado de dicha declaración y copia del expediente del caso. El 25 de agosto de 2023, Salamanca Serrano respondió el correo electrónico de la Lcda. Trejo y le aclaró que, según los récords municipales, LUMA Energy tenía pendientes los casos IS-280, IS-270 e IS-262.[22]

---

[15] SUMAC, Entrada Núm. 1, anejo 3, págs. 11-12 y anejo 4, págs. 12-13.
[16] *Íd.,* anejo 3, pág. 13.
[17] *Íd.,* anejo 4, pág. 15.
[18] *Íd.,* anejo 3 y anejo 4, pág. 14.
[19] *Íd.,* anejo 3, pág. 16.
[20] *Íd.,* anejo 3, pág. 17.
[21] *Íd.,* anejo 2, págs. 2-3.
[22] *Íd.,* anejo 2, págs. 1, 3.

El 29 de septiembre de 2023, la Lcda. Trejo se comunicó con el Sr. Edward Roca Moreno, técnico de campo del Centro para la Reconstrucción del Hábitat, Inc., en adelante CRHI, y le indicó lo siguiente:

Saludos Sr. Roca,

Fuimos referidos por personal del Municipio de Isabela, para atender unas propiedades que aparentan estar en un proceso de declaración de estorbo público, pertenecientes a la AEE.

Como parte de sus labores de administración y operación, personal de LUMA ENERGY comparece como agente de la Autoridad ante tribunales y agencias en trámites relacionados a las propiedades y derechos reales de la AEE sobre el sistema de transmisión y distribución.

Recientemente, como parte de los trabajos de programa de capital, **advinimos en conocimiento de que la propiedad de la Autoridad, con catastro 07-008-056-05-000, ubicada en el Bo. Bejuco del Municipio de Isabela, fue declarada estorbo público**. En esta propiedad ubica una subestación de energía eléctrica en uso y una estructura que antiguamente se utilizaba como comercial de AEE.

Queremos verificar el estatus de esta declaración de estorbo y solicitar copia del expediente del caso Núm. 280. En específico **solicitamos información sobre los siguientes casos: IS-280, IS-270 y IS-262.**

De igual forma deseamos recibir copia de la Ordenanza Núm. 30. Serie 2021-2022 del Municipio de Isabela y sobre cualquier otro caso que afecte alguna propiedad de la AEE sobre los que tenga conocimiento.

Agradeceré se comunique con esta servidora sobre este particular.

Quedo a su orden[23]

(Énfasis nuestro).

El 6 de octubre de 2023, Edward Roca refirió el correo electrónico enviado por la Lcda. Trejo y le consultó si deseaba la celebración de una Vista Administrativa, o en su defecto, la presentación de titularidad.[24] Posteriormente, el 29 de diciembre

---

[23] SUMAC, Entrada Núm. 1, anejo 2, pág. 5.
[24] *Id.*, págs. 6-7.

de 2023, se coordinó la celebración de una Vista Administrativa para el 17 de enero de 2024.

Asimismo, entre las fechas del 15 de septiembre de 2023 y el 15 de diciembre del mismo año, el Municipio emitió varias multas relacionadas con la condición de abandono de las propiedades identificadas bajo los casos IS-262 e IS-270, las cuales fueron notificadas a la última dirección conocida, conforme a la información provista por el CRIM.[25]

El 17 de enero de 2024, el Municipio emitió una *"Resolución y Orden de Seguimiento"* firmada por la Oficial Examinadora, Lcda. Yanira Liceaga, en el cual se consignó un recuento de lo ocurrido durante la Vista Administrativa celebrada ese mismo día. En síntesis, la Lcda. Trejo manifestó que el Informe debía formar parte del expediente administrativo, estar debidamente firmado por su autor e incluir las cualificaciones de la persona que lo preparó. Alegó que el informe presentaba ***deficiencias sustanciales***, solicitó acceso al expediente del caso y ***cuestionó la adecuación de la notificación, requiriendo evidencia del correo certificado***. Por su parte, el técnico Roca Moreno, aclaró que el informe fue debidamente notificado conforme a derecho y recibido por Ángel García y Jean Paul Carazo. La Lcda. Trejo indicó que LUMA Energy cuenta con personal encargado del mantenimiento de sus propiedades, aunque no poseía evidencia reciente sobre labores de limpieza o mantenimiento en la propiedad objeto del caso comprometiéndose a presentar documentación que acredite los trabajos realizados. Luego de evaluar la prueba y los planteamientos de las partes, el Municipio concedió una extensión del término de treinta (30) días para que LUMA Energy realizara las obras necesarias dirigidas a eliminar la condición de estorbo público señalada en el informe preliminar, contados a partir de la

---

[25] SUMAC, Entrada Núm. 1, anejo 3, págs. 17-20 y anejo 4, págs. 18-21.

fecha de notificación de la *"Resolución y Orden"* del 17 de enero de 2024. Por consiguiente, se señaló vista de seguimiento para el 21 de febrero de 2024 y se ordenó a la parte denunciada: (1) atender todas las fallas señaladas en el informe; (2) proveer evidencia de las gestiones realizadas; (3) proveer evidencia de los trabajos y/o tareas de mantenimiento realizados en la propiedad.[26]

El 19 de enero de 2024, Roca Moreno se comunicó con la Lcda. Trejo, mediante correo electrónico, al cual adjuntó Resoluciones de los casos IS-262 y IS-270, así como la evidencia solicitada del envío de informe preliminar mediante carta certificada de ambos casos. [27]

El 21 de febrero de 2024 el Municipio emitió una *"Resolución y Orden de Seguimiento",* en que se consignó que la Lcda. Trejo no podría comparecer a la Vista Administrativa señalada para esa fecha, por lo que la misma fue reprogramada para el 24 de abril de 2024. Asimismo, se le requirió que remitiera evidencia, por correo electrónico, de los arreglos efectuados en la propiedad objeto del caso de epígrafe. En cumplimiento de lo ordenado, la Lcda. Trejo notificó ese mismo día, mediante correo electrónico, que conforme lo informado por el equipo de Facilidades de LUMA Energy, se completaron trabajos de limpieza y mantenimiento de áreas verdes en las propiedades señaladas y que se estaba trabajando un plan para el manejo o disposición de las estructuras en éstas.[28]

El 23 de abril de 2024, LUMA ENERGY presentó una *"Moción Informativa"* en la que detalló las gestiones realizadas en las propiedades para eliminar las condiciones de estorbo público en las propiedades correspondientes a los casos IS-262, IS-270 e IS-280 y solicitó el archivo de las querellas administrativas.[29]

---

[26] SUMAC, Entrada Núm. 1, anejo 3, págs. 21-23 y anejo 4, págs. 22-24.
[27] *Íd.*, anejo 2, pág. 8.
[28] *Íd.*, anejo 3, págs. 24-26.
[29] *Íd.*, anejo 8.

El 24 de abril de 2024 se celebró una Vista de Seguimiento, durante la que se expuso que, tras la evaluación de la propiedad objeto del caso IS-262, se determinó proceder con su demolición una vez se identificaran los fondos necesarios. En cuanto al monto de $10,500.00 en multas administrativas, se alegó **falta de notificación adecuada, toda vez que las notificaciones fueron enviadas a la dirección que aparece en el CRIM.**[30]

Posteriormente, tras varias comunicaciones entre las partes, el 28 de agosto de 2024, el Municipio emitió *Resoluciones de Cierre* respecto a los casos IS-262 e IS-270, las cuales fueron notificadas a la representación legal de LUMA Energy el 5 de septiembre de 2024 mediante correo electrónico. En dichas *Resoluciones*, el Municipio consignó el plan de acción presentado por LUMA Energy, firmado por la gerente de Facilidades, ordenó el cierre de los casos administrativos por cumplimiento, pero mantuvo las multas previamente impuestas. La Lcda. Trejo informó además que la propiedad correspondiente al caso IS-270 había sido rehabilitada y que se le brindaría mantenimiento continuo. En cuanto a las multas, sostuvo falta de notificación por parte del Municipio.

A la *"Resolución de Cierre"* se incluyó la Certificación de Deuda, en la cual se desglosaron las multas administrativas impuestas, que totalizan $10,500.00, conforme al siguiente detalle: 19 de mayo de 2023 — $500.00; 15 de septiembre de 2023 — $1,000.00; 16 de octubre de 2023 — $2,000.00; 15 de noviembre de 2023 — $3,000.00; 15 de diciembre de 2023 — $4,000.00.[31]

No obstante, el Municipio efectuó un ajuste al monto, disponiendo que el total adeudado ascendería a $3,150.00 por cada caso, siempre que se efectuara el pago dentro de los treinta

---

[30] SUMAC, Entrada Núm. 1, anejo 3, págs. 30-33 y anejo 4, págs. 28-31.
[31] *Íd.*, anejo 13.

(30) días siguientes a la notificación de la resolución. Según se desprende de la Certificación sobre Actividades para la Declaración de Estorbo Público emitida por el CRH, en los casos IS-262 e IS-270, el Municipio impuso una multa de quinientos dólares ($500.00) en cada caso, con fecha del 19 de mayo de 2023. No obstante, dichas multas no constan en el expediente administrativo provisto por el Municipio en respuesta a la solicitud de información presentada al amparo de la Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública.[32]

El 25 de septiembre de 2024, LUMA ENERGY presentó, ante el TPI-Aguadilla, una *"Moción Solicitando Revisión Judicial de la Declaración de Estorbos Públicos y de Multas Administrativas"*, impugnando las *Resoluciones* emitidas por el Municipio el 5 de septiembre de 2024. En su escrito, LUMA ENERGY solicitó que se archivaran y dejaran sin efecto tanto las declaraciones de estorbo público como las multas administrativas impuestas en los casos IS-262 e IS-270, alegando falta de notificación adecuada y violación al debido proceso de ley en perjuicio de la AEE y de LUMA ENERGY.[33]

El 25 de noviembre de 2024, el Municipio presentó una *"Moción de Desestimación* en la que alegó haber cumplido con las disposiciones de notificación establecidas en el Artículo 4.008 del Código Municipal de Puerto Rico,[34] en adelante, Código Municipal, Ley 107-2020, 21 LPRA sec. 7632, y sostuvo además la falta de jurisdicción sobre la persona y la falta de exposición de una reclamación que justifique la concesión de un remedio, en relación

---

[32] SUMAC, Entrada Núm. 1, anejo 13.
[33] SUMAC, Entrada Núm. 1.
[34] El Código Municipal de Puerto Rico fue enmendado mediante la Ley Núm. 114-2024, del 29 de julio de 2024. Sin embargo, para efectos del presente caso resulta aplicable la versión vigente al momento de los hechos.

con la Revisión Judicial solicitada por LUMA ENERGY el 25 de septiembre de 2024.[35]

Por su parte, el 20 de diciembre de 2024, LUMA ENERGY presentó su oposición a la referida moción, argumentando falta de diligencia del Municipio en la notificación adecuada de las múltiples etapas del procedimiento administrativo, así como falta de buena fe y competencia por parte del ente municipal.[36]

El *1 de julio de 2025*, el Tribunal de Primera Instancia, Sala Superior de Aguadilla, emitió *Sentencia* mediante la cual declaró *Ha Lugar* el *Recurso de Revisión* presentado por la AEE, por conducto de LUMA ENERGY, y ordenó al Municipio el archivo de las declaraciones de estorbo público emitidas en los casos IS-262 e IS-270. Asimismo, el Tribunal dejó sin efecto las multas e informes de gastos expedidos por el Municipio en dichos casos, que ascendían a más de $10,500.00 por cada uno, al concluir que las actuaciones municipales adolecieron de *falta de notificación adecuada* y constituyeron una violación al debido proceso de ley de la AEE y de LUMA ENERGY.[37]

El 17 de julio de 2025, el Municipio de Isabela presentó una *"Moción de Reconsideración y Determinaciones de Hechos Adicionales"*, solicitando que se enmendara la sentencia emitida el 1 de julio de 2025. En síntesis, el Municipio argumentó que el Tribunal de Primera Instancia carecía de jurisdicción para atender el recurso de revisión judicial relacionado con las declaraciones de estorbo público de los casos IS-262 e IS-270, ya que dichos casos habían sido desestimados y/o archivados administrativamente. Argumentó que, al haberse cerrado los casos administrativos, no existía una determinación vigente que el tribunal pudiera revisar, por lo que la intervención judicial resultaba improcedente.

---

[35] SUMAC, Entrada Núm. 6.
[36] SUMAC, Entrada Núm. 9.
[37] SUMAC, Entrada Núm. 18.

Finalmente, al amparo de la Regla 43.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 43.1, solicitó que la sentencia se enmendara para que constara como hecho probado que los casos administrativos IS-262 e IS-270 fueron cerrados mediante *"Resolución"* del 28 de agosto de 2024.[38]

El 29 de julio de 2025, LUMA Energy presentó su *"Oposición a la Moción de Reconsideración"*, argumentando que de la propia Resolución y Orden emitida en los casos administrativos no surgía una desestimación o cierre definitivo, ya que el Municipio se reservó la facultad de reabrir los casos tras una inspección periódica si las propiedades volvían a presentar condiciones de estorbo público. Sostuvo que el cierre dispuesto fue condicionado, sin que se eliminara la determinación inicial de estorbo público, por lo que sus efectos continuaban vigentes. Además, alegó que el Municipio no fundamentó de manera específica su planteamiento de falta de jurisdicción.[39]

El 15 de agosto de 2025, el Tribunal de Primera Instancia emitió una *"Resolución Interlocutoria"* declarando *"No Ha Lugar"* la *"Moción de Reconsideración y la Solicitud de Enmendar la Sentencia"* presentada por el Municipio.[40]

Inconforme, el 10 de septiembre de 2025, el Municipio presentó el recurso de *Apelación* que nos ocupa, en el cual formuló los siguientes señalamientos de error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR EL RECURSO DE REVISIÓN JUDICIAL, PESE A QUE CARECÍA DE JURISDICCIÓN SOBRE LA MATERIA PARA ORDENAR EL ARCHIVO DE LOS CASOS IS-262 E IS-270 POR ENCONTRARSE ESTOS DESESTIMADOS Y/O CERRADOS ADMINISTRATIVAMENTE.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR EL RECURSO DE REVISIÓN JUDICIAL, PESE A QUE CARECÍA DE JURISDICCIÓN**

---

[38] SUMAC, Entrada Núm. 19.
[39] SUMAC, Entrada Núm. 20.
[40] SUMAC, Entrada Núm. 21.

**SOBRE LA MATERIA PARA DEJAR SIN EFECTO LAS MULTAS EMITIDAS EN LOS CASOS IS-262 E IS-270.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA PARTE APELADA DEBIÓ SER EMPLAZADA PERSONALMENTE, PESE A QUE EL CÓDIGO MUNICIPAL PERMITE LA NOTIFICACIÓN MEDIANTE CORREO CERTIFICADO Y MEDIANTE LA PUBLICACIÓN DE AVISO PÚBLICO.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LAS MULTAS EMITIDAS EN EL PROCEDIMIENTO ADMINISTRATIVO EXCEDÍAN LO PERMITIDO POR EL CÓDIGO MUNICIPAL.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN Y DETERMINACIONES DE HECHOS ADICIONALES Y NO ENMENDAR LA SENTENCIA, PESE A QUE SURGÍA DE LA RESOLUCIÓN EMITIDA EN LOS CASOS ADMINISTRATIVOS QUE ESTOS SE ENCONTRABAN DESESTIMADOS Y/O CERRADOS ADMINISTRATIVAMENTE.**

El 10 de octubre de 2025, la parte apelada, sometió su *"Moción en Cumplimiento de Orden y Alegato en Oposición de la Parte Apelada"*. Con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Apelación Civil**

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *Freire Ruiz et al. v. Morales, Hernández,* 2024 TSPR

129, 215 DPR ___ (2024); *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, supra. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *Apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

**B. Debido Proceso de Ley**

Al determinar las características mínimas que debe reunir un procedimiento mediante el cual el Estado pretende afectar negativamente un interés de libertad o propiedad cobijado por las garantías del debido proceso de ley, la característica medular es que el procedimiento que siga el Estado sea justo. *Domínguez*

*Castro et al. v. E.L.A. I,* 178 DPR 1, 46 (2010); *Rivera Santiago v. Srio. De Hacienda,* 119 DPR 265, 274 (1987).

Por tanto, se exige de la agencia una notificación correcta, que es característica imprescindible del debido proceso de ley. La notificación concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia y otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad de decidir si ejercen los remedios que la ley les reserva para impugnar la determinación. *Katiria's Café v. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Asoc. Vec. Altamesa Este v. Municipio de San Juan,* 140 DPR 24, 34 (1996). Ante ello, resulta indispensable que se notifique adecuadamente cualquier determinación de la agencia que afecte los intereses de un ciudadano.

La importancia de la notificación adecuada radica en el efecto que tiene dicha notificación sobre los procedimientos posteriores al dictamen final emitido. La falta de una debida notificación podría afectar el derecho de una parte a cuestionar el dictamen emitido y debilita las garantías del debido proceso de ley. *Río Const. Corp. v. Mun. de Caguas,* 155 DPR 394, 395 (2001). En síntesis, ***no se podrá requerir a una parte el cumplimiento con una orden o resolución final, a menos que haya sido notificada de la misma.***

El Artículo 4.008 del Código Municipal, supra, sec. 7632 faculta a los municipios a realizar estudios e inspecciones dentro de sus límites territoriales con el fin de identificar aquellas propiedades que, por su condición, deban ser declaradas estorbo público, procurando que dichas inspecciones causen el menor perjuicio posible a sus ocupantes.

Asimismo, el referido Artículo dispone el procedimiento de notificación que deben seguir los municipios una vez identificadas

las propiedades objeto de declaración. En lo pertinente, establece que:

> Concluido los estudios, procederá a identificar como estorbo público toda estructura o solar que sea declarado como tal, según definido en este Código y **notificará a los propietarios, poseedores y personas con interés, personalmente o por correo certificado de su intención de declarar la propiedad como estorbo público,** informándoles de su derecho a una vista donde podrán oponerse a la declaración de la propiedad como estorbo público. **Para la notificación deberá cumplirse sustancialmente con el proceso de diligenciamiento según establecido en la Regla 4 de Procedimiento Civil de 2009, y de ignorarse el paradero de tales personas, se publicarán avisos en un (1) periódico impreso de circulación general o regional y uno (1) digital de conformidad con las ordenanzas del municipio y sin que medie orden judicial previa.**

> *Íd.*

Por otro lado, la Ordenanza Núm. 30, Serie 2021-2022 del Municipio de Isabela, en adelante, Ordenanza Núm. 30, aprobada al amparo del Código Municipal, *supra*, reglamenta el procedimiento de notificación en su Artículo 9, el cual dispone:

> a) Primer intento. Para cumplir sustancialmente con la Regla 4 de Procedimiento Civil, la denuncia preliminar de la Oficina del Alcalde y la Oficina de Gerencia y Desarrollo de Proyectos y toda resolución y orden emitida por el Oficial Examinador **se notificará al propietario, poseedor o parte con interés de las siguientes maneras**:

>> i) **personalmente o por correo certificado, a la dirección postal registrada con el CRIM y cualquier dirección postal adicional obtenida por el Municipio durante su investigación.** De tratarse de una persona jurídica, se utilizarán también las direcciones disponibles en el Registro de Corporaciones del Departamento de Estado. **De ser devuelto cualquier correo certificado por dirección inexistente o desocupada, no se volverá a enviar a dicha dirección;** y

>> ii) fijando copia en sitio conspicuo en el lugar afectado.

> b) Segundo intento. De no poder obtener una dirección postal activa o localizar al propietario, poseedor o parte con interés; **de ser devueltas las notificaciones anteriores**; **o**

**de no contestar la notificación enviada exitosamente dentro del término de veinte (20) días calendario**, se procederá con la notificación de la denuncia preliminar y las órdenes emitidas por el Oficial Examinador de la siguiente manera:

> i) **publicando un aviso público en un periódico regional o de circulación general**; y
>
> ii) **publicando un aviso público en un medio digital, que podrá ser alguna red social del Municipio.**

(Énfasis suplido).

Esta reglamentación municipal complementa la disposición del Artículo 4.008 del Código Municipal, *supra*, sec. 7632, garantizando que los procedimientos de declaración de estorbos públicos se realicen conforme al debido proceso de ley, mediante múltiples mecanismos de notificación que aseguran un esfuerzo razonable para informar a los propietarios o interesados antes de continuar con la declaración o demolición de la propiedad afectada.

### C. Emplazamiento

El emplazamiento constituye un mecanismo procesal esencial mediante el cual se notifica al demandado la existencia de una reclamación incoada en su contra. A través de este mecanismo el Tribunal adquiere jurisdicción sobre la persona del demando. *Ross Valedón vs. Hosp. Dr. Susoni et al*, 213 DPR 481, 487-488 (2024).

El diligenciamiento adecuado del emplazamiento es un requisito de naturaleza constitucional, pues salvaguarda el derecho al debido proceso de ley. Por ello, nuestra jurisprudencia ha reiterado que los requisitos relativos al emplazamiento deben cumplirse estrictamente. *Banco Popular v. S.L.G. Negrón,* 164 DPR 855 (2005); *Datiz v. Hospital Episcopal*, 163 DPR 10, 15 (2004).

Las Reglas de Procedimiento Civil, supra, establecen dos maneras para diligenciar un emplazamiento, a saber: de forma personal o mediante edicto. *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1005 (2021); *Sánchez Ruiz v. Higuera Pérez,* 203 DPR 982, 987 (2020). El diligenciamiento personal del emplazamiento es el método más idóneo para adquirir jurisdicción sobre la persona. Sin embargo, por vía de excepción, las Reglas de Procedimiento Civil, supra, autoriza emplazar por edicto. *Sánchez Ruiz v. Higueras Pérez et al.,* supra, págs. 987-988; *Banco Popular v. S.L.G. Negrón,* supra, pág. 865.

La Regla 4 de Procedimiento Civil, supra, es la que rige los pormenores al ejercicio de emplazamiento. Además, la precitada Regla desarrolla los contornos de un emplazamiento efectivo y conforme a derecho. La Regla 4.4 de Procedimiento Civil, supra, atiende el emplazamiento personal, mediante el cual se hace entrega física a una parte demandada del emplazamiento y de la copia de la demanda en su contra. Así, la Regla 4.6 de Procedimiento Civil, supra, detalla el proceso adecuado para el emplazamiento por edicto, mediante el cual se notifica a una parte demandada a través de la publicación de un edicto en un periódico de circulación general. Por lo general, este mecanismo es utilizado cuando la persona demandada está fuera de Puerto Rico, o estando en nuestra jurisdicción, la misma no pueda ser localizada.

Por su pertinencia al caso de marras, destacamos que el emplazamiento de corporaciones también se rige por la Ley de Corporaciones de 2009, en adelante, Ley de Corporaciones, Ley Núm. 164-2009, 14 LPRA sec. 3501 *et seq.* El referido estatuto dispone que:

> Se emplazará a cualquier corporación organizada en el Estado Libre Asociado entregando personalmente una copia del emplazamiento a cualquier oficial o director de la corporación en el Estado Libre Asociado, o al agente

inscrito de la corporación en el Estado Libre Asociado, o dejándola en el domicilio o residencia habitual de cualquier oficial, director o agente inscrito (si el agente inscrito es un individuo) en el Estado Libre Asociado, o en la oficina designada u otra sede de negocios de la corporación en el Estado Libre Asociado.

[...]

Artículo 12.01 de la Ley de Corporaciones, supra, sec. 3781.

### D. Recurso de Revisión Judicial

El Artículo 1.009 de Código Municipal, supra, sec. 7014, establece el procedimiento para la revisión de toda multa administrativa. En particular, dispone que:

En el ejercicio de sus facultades para reglamentar, investigar, emitir decisiones, certificados, permisos, endosos y concesiones, **el Municipio podrá imponer y cobrar multas administrativas de hasta un máximo de cinco mil dólares ($5,000) por infracciones a sus ordenanzas**, resoluciones y reglamentos de aplicación general, conforme se establezca por ley u ordenanza.

El municipio **deberá adoptar mediante ordenanza un procedimiento uniforme para la imposición de multas administrativas, que contenga las garantías del debido proceso de ley en su vertiente sustantiva,** similar al establecido en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

**En aquellos municipios donde existan Tribunales Administrativos, estos tendrán jurisdicción primaria para revisar las multas administrativas indicadas.** Las decisiones emitidas por los Tribunales Administrativos podrán ser revisadas por el Tribunal de Primera Instancia. El Tribunal de Primera Instancia tendrá jurisdicción para conocer y resolver sobre cualquier violación a las ordenanzas que incluya sanciones penales de los municipios. **En los otros casos, el Tribunal de Primera Instancia entenderá en toda solicitud de revisión judicial de cualquier persona adversamente afectada por una orden o resolución municipal imponiendo una multa administrativa.**

(Énfasis nuestro).

En adición, el Artículo 4.013 del Código Municipal, supra, sec. 7638, dispone expresamente que las actuaciones municipales realizadas al amparo de las disposiciones del Capítulo II, relativo a la Restauración de las Comunidades, serán revisables por el Tribunal de Primera Instancia, con excepción de aquellas que constituyan acciones de expropiación.

Por su parte, el Capítulo VI del Código Municipal de Puerto Rico, *supra*, relativo a la jurisdicción de los tribunales de justicia, delimita la intervención judicial en los asuntos de naturaleza municipal. En particular, el Artículo 1.050, incisos (a) y (b), del referido Código, supra, sec. 7081, dispone que el Tribunal de Primera Instancia entenderá y resolverá, a instancia de la parte perjudicada, los reclamos encaminados a revisar cualquier acto legislativo o administrativo de *funcionarios u organismos municipales* que resulte contrario a la ley o que vulnere derechos constitucionales. Asimismo, confiere al Foro Primario la facultad de suspender la ejecución de cualquier funcionario municipal cuya actuación menoscabe derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico. Dicho artículo, además, dispone que tales acciones judiciales deberán instarse dentro del término de veinte (20) días contados desde la notificación del acto, orden o resolución impugnada.

El Código Municipal, supra, no dispone expresamente la forma en que deben notificarse los recursos de revisión judicial interpuestos al amparo de sus disposiciones.

La Regla 4 de Procedimiento Civil, supra, regula el emplazamiento y la notificación en los procedimientos judiciales ordinarios que se inician mediante una reclamación. Sin embargo, dicha Regla no es aplicable a los recursos de revisión judicial de determinaciones administrativas, los cuales se rigen por

disposiciones especiales de ley o, en su defecto, por reglas análogas que garanticen el debido proceso de ley.[41]

En ese contexto, y considerando que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones ejercen funciones revisoras en este tipo de procedimientos, resulta razonable acudir por analogía a la Regla 58(B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 58(B), para suplir el vacío normativo sobre las notificaciones. Dicha disposición establece las normas sobre la notificación y trámite de los recursos de revisión judicial ante dicho foro. Esta aplicación supletoria se fundamenta en la naturaleza especial de los recursos de revisión judicial, cuyo propósito es impugnar actuaciones administrativas mediante un procedimiento de control judicial limitado a la revisión de la legalidad de la actuación recurrida.

### E. Multas Administrativas

La Ordenanza Núm. 30 regula específicamente los remedios derivados de la declaración de estorbo público. Su Artículo 10, inciso (d), dispone que el Municipio podrá imponer multas mensuales escalonadas por la mera existencia del estorbo, con los montos iniciales de quinientos dólares ($500) en el primer mes, incrementándose progresivamente hasta cinco mil dólares ($5,000) a partir del sexto mes y cada mes subsiguiente, conforme a las facultades conferidas en los Artículos 1.009, 1.039(f) y 1.039(m) del Código Municipal, supra, secs. 7014 y 7065 respectivamente. Dichas disposiciones permiten al Municipio aplicar sanciones económicas periódicas mientras subsista la condición de estorbo, garantizando al mismo tiempo que el procedimiento de imposición de multas cumpla con las garantías del debido proceso de ley, ***incluyendo notificación a los propietarios, poseedores o***

---

[41] KLCE202400216.

***partes con interés y la oportunidad de impugnar las medidas
administrativas correspondientes.***

Como se estableció anteriormente, el Artículo 1.009 del
Código Municipal, *supra*, sec. 7014, dispone que, en el ejercicio de
sus facultades para reglamentar, investigar, emitir decisiones,
certificados, permisos, endosos y concesiones, el Municipio podrá
imponer y cobrar multas administrativas de hasta un máximo de
cinco mil dólares ($5,000) por infracciones a sus ordenanzas,
resoluciones y reglamentos de aplicación general, conforme se
establezca por ley u ordenanza. Además, el citado Artículo requiere
que el municipio adopte mediante ordenanza un procedimiento
uniforme para la imposición de multas administrativas, el cual
debe incorporar las garantías del debido procedimiento de ley en
su vertiente sustantiva, de forma similar a lo dispuesto en la Ley
de Procedimiento Administrativo Uniforme del Gobierno de Puerto
Rico, en adelante, LPAUG, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et
seq.*

Por su parte, la Sección 3.1 de la LPAUG, supra, sec. 9641 y
conforme a la jurisprudencia aplicable, todo procedimiento
adversativo debe cumplir con las garantías mínimas del debido
proceso de ley. Para satisfacer dichas exigencias, deben observase
los siguientes requisitos: (1) notificación adecuada del proceso; (2)
proceso ante un juez imparcial; (3) oportunidad de ser oído; (4)
derecho a contrainterrogar testigos y examinar la evidencia
presentada en su contra; (5) tener asistencia de abogado, y (6) que
la decisión se base en la evidencia presentada y admitida en el
juicio. *Katiria's Café v. Mun. de San Juan,* supra; *Vázquez González
v. Mun. San Juan,* 178 DPR 636, 643 (2010); *Rivera Rodríguez v.
Lee Stowell,* 133 DPR 881, 888-889 (1993); *Rivera Santiago v. Srio.
de Hacienda,* supra, pág. 274.

**III.**

Si bien los *señalamientos de error uno (1), dos (2) y cinco (5)* formulados por el Municipio se presentan como cuestiones independientes, este Foro los atenderá de manera conjunta, por encontrarse estrechamente vinculados entre sí y referirse, en esencia, a la alegada falta de jurisdicción del TPI-Aguadilla para resolver el recurso de revisión judicial presentado por LUMA ENERGY.

Los errores señalados giran en torno al planteamiento del Municipio con relación a la falta de jurisdicción del TPI-Aguadilla sobre la materia para: (1) ordenar el archivo de los casos administrativos IS-262 e IS-270, (2) dejar sin efecto las multas emitidas en dichos casos, y (3) posteriormente denegar la moción de reconsideración y determinaciones de hechos adicionales, ya que —según el Municipio— ambos expedientes se encontraban desestimados y/o cerrados administrativamente mediante Resolución de 28 de agosto de 2024. *No le asiste la razón.*

Conforme, dispone el Artículo 1.009 del Código Municipal, supra, sec. 7014, el TPI-Aguadilla tenía jurisdicción para atender el recurso de revisión judicial presentado por LUMA ENERGY respecto a la determinación administrativa que declaró estorbo público las propiedades pertenecientes a la AEE y las multas emitidas por dicho Municipio. El referido Artículo expresamente dispone que el Tribunal de Primera Instancia *conocerá y resolverá sobre toda solicitud de revisión judicial presentada por una persona adversamente afectada por una orden o resolución municipal que imponga multas administrativas.*

Por otra parte, en su solicitud de revisión judicial, LUMA ENERGY alegó violaciones a su derecho constitucional al debido proceso de ley, por haberse efectuado un procedimiento administrativo sin la notificación adecuada. Tal alegación activa la

facultad revisora del TPI-Aguadilla al amparo del Artículo 1.050 del Código Municipal, *supra*, sec. 7081, que autoriza la revisión judicial de todo acto administrativo municipal que lesione derechos constitucionales o contravenga las leyes de Puerto Rico. En consecuencia, el Tribunal contaba con jurisdicción sobre la materia para evaluar la legalidad del proceso administrativo impugnado.

Del expediente surge que la *"Resolución de Cierre"* fue notificada por correo electrónico el *5 de septiembre de 2024*, y que LUMA ENERGY presentó su recurso de revisión judicial el *25 de septiembre de 2024*, dentro del término jurisdiccional de veinte (20) días dispuesto por Ley. Por tanto, el recurso fue oportunamente presentado, lo que confirió jurisdicción al Foro Primario.

En cuanto a la jurisdicción sobre la persona, consta en autos que la notificación del recurso de revisión judicial fue efectuada mediante correo certificado con acuse de recibo y correo electrónico, lo que satisface el propósito de notificar a la parte recurrida en este tipo de procedimientos especiales. Cabe destacar que, tratándose de un recurso de revisión judicial, no aplica el emplazamiento personal conforme a la Regla 4 de Procedimiento Civil, *supra*, por no tratarse de una acción judicial ordinaria. En ausencia de disposición específica en el Código Municipal, *supra*, sobre la forma de notificación, resulta pertinente la aplicación supletoria de la Regla 58(B) del Reglamento del Tribunal de Apelaciones, que reconoce la validez de la notificación electrónica en estos procesos y garantiza el cumplimiento del debido proceso de ley.

Por todo lo anterior, este Tribunal concluye que el TPI-Aguadilla contaba con jurisdicción tanto sobre la materia como sobre la persona, habiéndose presentado el recurso dentro del término dispuesto por Ley y notificado conforme a derecho. En

consecuencia, los señalamientos de error uno (1), dos (2) y cinco (5) carecen de mérito.

Como *tercer planteamiento de error*, el Municipio alega que el TPI-Aguadilla erró al determinar que la parte apelada debió ser emplazada personalmente, pese a que el Código Municipal, supra, permite la notificación mediante correo certificado y mediante la publicación de aviso público. *No le asiste la razón.*

Si bien el Código Municipal, *supra*, y la Ordenanza Núm. 30 contemplan la notificación por publicación de avisos o mediante edictos como mecanismos alternos a la notificación por correo certificado, lo cierto es que tales medios no sustituyen la obligación de emplazar diligentemente a una parte cuando esta es perfectamente localizable y se trata de una corporación organizada en Puerto Rico, como lo son LUMA ENERGY y la AEE. El Municipio no podía presumir que se ignoraba el paradero de dichas corporaciones o de sus representantes, ni recurrir al emplazamiento por edicto sin agotar previamente gestiones razonables para efectuar una notificación personal o válida conforme a derecho.

Del expediente surge que las notificaciones iniciales cursadas por el Municipio *se remitieron a la dirección incorrecta* que obraba en el CRIM, y al menos una de ellas fue devuelta por el Banco Popular Internal Mail Department en el mes de julio del año 2023, lo que debió alertar a la parte apelante que el emplazamiento no había sido diligenciado de forma efectiva. Lo cierto es que, la dirección correcta de las corporaciones es información de fácil corroboración en registros públicos oficiales. Sin embargo, el Municipio optó por continuar utilizando la dirección incorrecta y recurrir al emplazamiento por edicto, mecanismo que la jurisprudencia reserva únicamente para circunstancias excepcionales. Tal omisión denota falta de diligencia,

particularmente cuando ya se tenía conocimiento de la devolución del correo certificado.

En adición, consta que desde el 24 de agosto de 2023 la Lcda. Trejos Gutiérrez notificó expresamente al Municipio que no había recibido las comunicaciones relacionadas con la declaración de estorbo público. No obstante, el Municipio continuó emitiendo multas administrativas contra LUMA ENERGY y la AEE, omitiendo realizar la notificación correspondiente tanto a las corporaciones como a sus representantes legales. Estas multas ascendieron a un total de diez mil quinientos dólares ($10,500.00), impuestas en distintas fechas entre los meses de mayo y diciembre del año 2023, *todas notificadas a la misma dirección incorrecta* que surgía en el CRIM. Ello evidencia que, aun después de haber sido advertido, el Municipio persistió en un patrón de falta de diligencia procesal que agravó la violación al derecho a una debida notificación y, por ende, al debido proceso de ley de las corporaciones afectadas.

En vista de lo anterior, concluimos que el foro primario *actuó correctamente* al determinar que el Municipio no cumplió con los requisitos esenciales de emplazamiento, y que la notificación ineficaz por correo certificado o la publicación de avisos no suplen la obligación de notificar de manera adecuada a una parte localizable, especialmente cuando se trata de corporaciones establecidas en Puerto Rico.

En cuanto al señalamiento del *cuarto error,* relacionado con las multas impuestas en los procedimientos administrativos IS-262 e IS-270, el Municipio planteó que el TPI-Aguadilla erró al dejar sin efecto las sanciones por exceder el límite permitido por el Código Municipal de Puerto Rico. De la evidencia que obra en el expediente, se desprende que las multas originalmente ascendían a la suma total de dos mil quinientos dólares (**$10,500.00**), desglosadas de la siguiente manera: quinientos dólares

(**$500.00**) el 19 de mayo de 2023, mil dólares (**$1,000.00**) el 15 de septiembre de 2023, dos mil dólares (**$2,000.00**) el 16 de octubre de 2023, tres mil dólares (**$3,000.00**) el 15 de noviembre de 2023 y cuatro mil dólares (**$4,000.00**) el 15 de diciembre de 2023. No obstante, el propio Municipio reconoció posteriormente un ajuste al monto, disponiendo que el total adeudado ascendería a tres mil ciento cincuenta dólares (**$3,150.00**) **por cada caso**, siempre que se efectuara el pago dentro de los treinta (30) días siguientes a la notificación de la resolución.

Como se discutió anteriormente, el Artículo 1.009 del Código Municipal, supra, sec. 7014, autoriza a los municipios a imponer multas administrativas de hasta un máximo de cinco mil dólares ($5,000) por infracciones a sus ordenanzas y reglamentos, conforme a lo dispuesto por ley u ordenanza. De igual forma, la Ordenanza Núm. 30, en su Artículo 10, inciso (d), establece un sistema de multas mensuales y escalonadas, comenzando en quinientos dólares ($500.00) durante el primer mes y aumentando progresivamente hasta un máximo de cinco mil dólares ($5,000.00) a partir del sexto mes y cada mes subsiguiente, mientras subsista la condición de estorbo. A la luz de dichas disposiciones, las sanciones impuestas por el Municipio no exceden los límites económicos autorizados por el marco normativo vigente.

Ahora bien, el análisis no culmina con la mera cuantía. Aun cuando las multas no exceden los topes legales, corresponde examinar si fueron impuestas y notificadas conforme a derecho, en cumplimiento con las garantías mínimas del debido proceso de ley. Del expediente administrativo se desprende que las notificaciones de las multas fueron enviadas a la dirección que aparece en los registros del CRIM, pero no consta evidencia de que dichas

notificaciones se recibieran o que se garantizaran medios efectivos de notificación a los representantes o custodios de la propiedad.

Además, según surge de la Certificación sobre Actividades para la Declaración de Estorbo Público emitida por el Coordinador de Reconstrucción y Hábitat (CRH), el Municipio impuso una multa de quinientos dólares ($500.00) en cada caso el 19 de mayo de 2023. Sin embargo, dichas determinaciones no obran en el expediente administrativo provisto por el Municipio en respuesta a la solicitud de información presentada al amparo de la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*, Ley Núm. 141-2019, 3 LPRA sec. 9911 *et seq.*, lo cual plantea serias dudas sobre la validez del proceso y la existencia de un expediente completo que permita evaluar la corrección de las actuaciones administrativas.

Tales omisiones resultan incompatibles con las exigencias del debido proceso de ley consagradas en la Sección 3.1 de la LPAUG, supra, sec. 9641, y la jurisprudencia reiterada de nuestro Tribunal Supremo, la cual exige que toda parte afectada por una actuación administrativa reciba una notificación adecuada del proceso.

A la luz de lo anterior, si bien las multas impuestas no excedían el límite económico permitido por el Código Municipal ni por la Ordenanza Núm. 30, la falta de evidencia que acredite su notificación adecuada y la ausencia de un expediente administrativo completo impiden convalidar su validez, por lo que el Foro Apelado actuó correctamente al dejar sin efecto las sanciones emitidas.

**IV.**

Por los fundamentos que anteceden, *confirmamos la sentencia apelada.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos concurre sin opinión escrita.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones